Carlos Herman MONTANO, Appellant,

v.

The STATE of Texas, Appellee.

No. 271–92.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 16, 1992.

Alan S. Percely, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., J. Harvey Hudson and Buck Buchanan, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Appellant was convicted of possession of cocaine with intent to deliver, sentenced to fifteen years confinement and assessed a fine of $10,000.00. Appellant's conviction was affirmed by the Court of Appeals. *Montano v. State*, No. C14–90–00846–CR, 1991 WL 57257 (Tex.App.—Houston [14th Dist.] April 18, 1991) (unpublished).

This court granted appellant's original petition for discretionary review to determine whether the Court of Appeals erred in finding that appellant's conduct justified his temporary detention and the subsequent search of his person.[1] We remanded the cause to the Court of Appeals for reconsideration in light of our opinion in *Crockett v. State*, 803 S.W.2d 308 (Tex.Cr. App.1991). *Montano v. State*, 817 S.W.2d 64 (Tex.Cr.App.1991). On remand, the Court of Appeals held that the facts in *Crockett* were distinguishable from the facts of the instant case and affirmed appellant's conviction. *Montano v. State*, No. C14–90–00846–CR, 1991 WL 256023 (Tex.App.—Houston [14th Dist.], December 5, 1991) (unpublished).

We granted appellant's petition for discretionary review to determine whether the Court of Appeals misconstrued and misapplied *Crockett* and erred in concluding that appellant's conduct was more suspicious than the conduct of the appellant in *Crockett.*[2]

### I.

At approximately 7:55 a.m. on April 21, 1990, two Houston Police Department narcotics officers[3] assigned to Houston Hobby Airport observed appellant and another man, who was later identified as Richard Montalban, exit an automobile at the pas-

---

1. Appellant's pretrial Motion to Suppress Evidence was denied by the trial court. Thereafter, appellant entered a plea of not guilty, executed a written Stipulation of Evidence and was adjudged guilty.

2. Appellant alleges in his petition for discretionary review of the Court of Appeals' opinion on remand that:
   1. The Court of Appeals has misconstrued and misapplied this Court's decision in *Crockett v. State*, 803 S.W.2d 308 (Tex.Cr.App.1991).
   2. The Court of Appeals erred in finding the facts and circumstances relied upon by the arresting officers in this case were more suspicious than those articulated in *Crockett v. State*, supra.
   3. The Court of Appeals erred in finding the actions taken by the officers in this case were considerably less intrusive than those taken by the officers in *Crockett v. State*, supra.

3. Only one of the arresting officers, Ralph Rodriguez, testified at the hearing on appellant's Motion to Suppress. Rodriguez testified that he had been assigned to the narcotics division of the Police Department for two years, but did not testify about the experience of the other officer.

senger drop-off. Appellant was wearing a heavy leather jacket even though it was a warm and sunny morning. The officers also noticed that the two men appeared to be nervous and scanning the area for someone watching or following them. Appellant and Montalban went into the airport lobby where the officers observed them making an inquiry of a passing Continental Airlines employee. Thereafter, appellant and Montalban bypassed the ticket counters and approached a concourse. As they neared the magnetometer, appellant handed his bag to Montalban who placed appellant's bag on the conveyor belt and proceeded through the magnetometer after appellant. Montalban retrieved the bag after it had gone through x-ray and returned it to appellant. At that point, the officers approached the suspects and identified themselves as Houston Police officers. The officers asked appellant and Montalban whether they had just arrived in Houston or whether they were departing. Appellant responded that they were flying out to San Antonio. In response to an inquiry about their plane tickets, appellant stated that they were meeting a woman who had their tickets. The officers asked appellant which airline they were taking and appellant responded that they were flying Northwest Airlines. One of the officers testified that he had previously checked the outbound flight schedule and was aware that the only flight Northwest Airlines had at that time of the day was a flight to Saginaw–Detroit. Appellant and Montalban responded to further questions concerning their identification and residence and each produced a valid driver's license upon request. After questioning appellant about his employment, the officers identi-

fied themselves as "narcotics officers conducting a narcotics investigation" and asked whether either suspect was carrying narcotics. Both suspects denied having narcotics in their possession. Appellant then consented to a search of his duffle bag which revealed only clothing. The officers again asked the suspects whether they were carrying narcotics on their person, to which they responded no. Noticing a "bulge" on the left side of appellant's jacket, one of the officers asked appellant a third time whether he was carrying narcotics on his person. Appellant said no, but at that time one of the officers reached over and "patted the outside of [appellant's] jacket." [4] Feeling a long, hard object, the officer asked appellant what it was. Appellant replied that it was cocaine.[5] The package was removed by the officer from appellant's jacket and it was later determined to be cocaine.

## II.

We remanded this cause to the Court of Appeals for consideration of the facts in light of our decision in *Crockett*. Based upon a meager recitation of the facts in *Crockett* and a single statement of law,[6] the Court of Appeals on remand concluded that appellant's conduct and the circumstances surrounding his detention were "more suspicious than those articulated in *Crockett*" and that appellant's detention was much less intrusive than that in *Crockett*. *Id.* at 3. We hold that the conclusions of the Court of Appeals are inconsistent with our decision in *Crockett*.

In *Crockett*, narcotics officers monitoring the Amtrack Station in Houston, Texas observed the appellant and a woman arrive

---

4. The officer testified that he did not fear for his safety, but that "he patted the outside of the jacket to see what the large bulge was."

5. There is an inconsistency in the officer's testimony as to whether appellant responded immediately when asked what the object was, or whether he responded only upon being asked a second time.

6. The Court of Appeals' opinion summarized the facts leading to the appellant's initial encounter with the arresting officers in *Crockett* by stating that "the arresting officers could not testify as to

any activity on the part of the appellant and his companions that would sufficiently set them apart and distinguish them from innocent people who were also at the train station." *Montano v. State*, No. C14–90–00846–CR, slip op. at 2, 1991 WL 256023 (Tex.App.—Houston [14th Dist.], December 5, 1991) (opinion on remand) (unpublished). The only law included in the Court of Appeals' opinion was a quote from our opinion in *Crockett* stating that minor intrusions require less evidence of wrongdoing than more extensive intrusions. *Id.* at 3.

at the station. The State claimed that the subsequent detention of the appellant was reasonable based upon suspicious behavior which included "travel to the city of Chicago, using cash to purchase tickets, looking around the train station lobby,[7] speaking little with one's traveling companions,[8] and becoming nervous when involuntarily detained." *Crockett*, 803 S.W.2d at 312. Addressing the legal requirements of reasonable suspicion in that context we said:

> even a temporary detention of this kind is not permissible unless the circumstances upon which the officers rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. (citations omitted). * * * At a minimum ... the suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them.

*Id.* at 311. We further said that the issue is not whether the suspect's behavior appears odd; rather, the suspect's "demeanor must have been indicative of drug trafficking in particular, not merely of eccentricity." *Id.* at 313. We held that the appellant's conduct in *Crockett* did not justify the detention.

▮▮▮ In the instant case, the facts known to the officers at the time at which appellant was subject to an investigatory detention[9] included: (1) appellant and Montalban had appeared nervous and appeared to have been scanning the area for someone watching or following them, (2) appellant and Montalban asked a question of a Continental Airlines employee and then bypassed ticket counters before approaching a concourse, (3) appellant was wearing a heavy leather jacket even though it was a warm and sunny day, (4) appellant handed his bag to Montalban before going through the magnetometer, whereupon Montalban placed appellant's bag on the conveyor to be x-rayed, (5) when stopped, appellant stated that they were traveling to San Antonio on Northwest airlines (although the officers knew that Northwest Airlines did not have a flight to San Antonio at that hour), and (6) both suspects acted nervous throughout the detention.

▮▮▮ Based upon the principles set forth in *Crockett*, we hold that appellant's conduct was not sufficiently suspicious as to give rise to reasonable suspicion justifying the continued detention and pat down of appellant's jacket. Under *Crockett*, in order for the officer's detention of appellant to have been reasonable, appellant's conduct must have been "sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set [appellant] apart from [innocent people]." *See id.* at 311. However, none of appellant's conduct was so beyond the norm of the conduct of innocent airport passengers as to amount to a reasonable suspicion that criminal activity was afoot. Appellant's conduct is not any more consistent with drug trafficking than the conduct of the appellant in *Crockett*. It is not indicative of guilt for a person to be nervous or to look around or "scan" his surroundings. *See id.* at 312; *see also Daniels v. State*, 718 S.W.2d 702, 707 (Tex.

---

7. In addition, the man who drove the appellant and the woman to the train station was described as "scoping the lobby for unknown purposes." *Crockett*, 803 S.W.2d at 310.

8. It was also noted that when the appellant and the woman left the lobby, they were walking about 10 or 15 feet apart from each other. *Crockett*, 803 S.W.2d at 310. One of the officers testified that "[n]ormally people traveling together would walk with each other talking about the trip." *Id.* at 310 n. 4.

9. In its original opinion, the Court of Appeals held that when the officer requested to search appellant's bag, the initial encounter became an investigative stop, requiring reasonable suspicion. *Montano v. State*, No. C14–90–00846–CR slip op. at 5, 1991 WL 57257 (Tex.App.—Houston [14th Dist.] April 18, 1991) (unpublished). This portion of the Court of Appeals' decision has not been challenged by either party. The State now contends that even if the encounter became a "temporary detention" when the officers searched appellant's bag, the relationship then reverted back to one of a simple lawful encounter. Because this issue was not raised before and addressed by the Court of Appeals, either originally or on remand, it is not properly before us.

Cr.App.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds, Juarez v. State,* 758 S.W.2d 772, 780 n. 3 (Tex.Cr.App.1988). Such conduct is not particularly odd in an airport where people are often running late, may be uncertain as to where the appropriate concourse or gate may be, or might have planned to meet someone they may or may not know. The fact that appellant did not stop at the ticket counters does not set him apart from other innocent passengers.[10] As appellant told the officers, he expected to meet someone who was to have his ticket. While such an arrangement may be unusual, there was no evidence that such an arrangement is indicative of drug trafficking. It is certainly within the norm to stop and ask airport personnel for gate directions or flight information. Although the average passenger may not have been wearing a heavy coat on that morning, it was not so out of the norm as to clearly or conclusively set appellant apart from an innocent passenger. *See Crockett,* 803 S.W.2d at 311. Airport passengers are in transit to a multitude of destinations with varying climates. A departing passenger wearing a coat may simply be preparing for colder weather at some time during their stay at their destination. The fact that appellant handed his bag to his traveling companion to place on the conveyer at the magnetometer does not indicate anything out of the ordinary and may merely have been a gesture of familiarity. Although appellant stated that he was traveling to San Antonio on Northwest Airlines even though there were no Northwest Airlines flights to San Antonio at that time of the day, it is possible that appellant had confused Northwest Airlines with Southwest Airlines, or that San Antonio was not appellant's immediate destination, but was his ultimate destination. This single inconsistency in appellant's responses to the officers' questions does not indicate drug trafficking. It is not beyond the norm for an innocent per-

son to appear nervous if detained and questioned by police officers. *Glass v. State,* 681 S.W.2d 599, 602 (Tex.Cr.App.1984). There is no evidence that any of appellant's behavior is significantly more likely to be exhibited by drug traffickers than the general population. *See Crockett,* 803 S.W.2d at 313.

The judgment of the Court of Appeals is reversed and this cause is remanded to the trial court.

CAMPBELL, J., dissents, believing that the initial detention in this case constituted no more than an "encounter" pursuant to *Florida v. Bostick,* —— U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), and thus the petition was improvidently granted in the first instance.

WHITE, J., joins Judge Campbell's note.

---

**10.** One of the officers testified that bypassing the ticket counter was suspect because "most passengers will approach the ticket counter, trying to find out whether they need to obtain a boarding pass, whether they need to check in luggage, whether their plane is on time or whether or not it has departed."