**Candace Waggoner WOODS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–95–00491–CR.**

Court of Appeals of Texas,
Austin.

Oct. 16, 1996.

720

Keith S. Hampton, Austin, for appellant.

Ronald Earle, District Attorney, Matthew B. Devlin, Assistant District Attorney, Austin, for appellee.

Before POWERS, JONES and B.A. SMITH, JJ.

JONES, Justice.

Our opinion and judgment dated September 18, 1996 are withdrawn.

Appellant was indicted for carrying a firearm in a court. Tex. Penal Code Ann. § 46.03(a)(3) (West Supp.1996). After her pretrial motion to suppress evidence was overruled, appellant pleaded guilty to the lesser offense of unlawfully carrying a weapon. Tex. Penal Code Ann. § 46.02(a) (West 1994). The district court adjudged appellant guilty and, pursuant to a plea bargain, assessed punishment at incarceration for one year, suspended imposition of sentence, and placed appellant on community supervision.[1] Appellant preserved her right to appeal the court's ruling on the motion to suppress. Tex.R.App. P. 40(b)(1). We will reverse.

## Background

On the day in question, appellant entered the Travis County Courthouse through the east, or main, entrance, passing as she did so a sign stating, "You are entering a security screening area. All persons and baggage are subject to a search." Inside the courthouse and a few feet from the entrance, appellant was confronted by a metal detector and an X-ray machine. Operating these machines were Kevin McCullen, a private security guard employed by the Travis County Sheriff's Department, and Billy Richardson, a deputy sheriff and McCullen's supervisor. McCullen testified that appellant had a "real surprised look, a scared look" when she saw the machines. Appellant "turned to her left and started to enter—and tried to go towards Room 112, which is the JP Five courtroom," the entrance to which was apparently outside the security devices but bore a sign

---

1. In the district court, appellant acknowledged that she was the person named in the indictment but stated that her name was Candace Waggoner Woods Mattox. The court's judgment does not reflect the name change.

advising that all persons must be screened before entering. Then "she turned around and started to go back out the doors...."

McCullen stopped appellant before she could leave the building and asked if he could help her. She told him that she was trying to get to the fifth floor. McCullen informed appellant that she would have to pass through the metal detectors to reach the elevators. Appellant told McCullen that she first had to go back to her car. According to McCullen, appellant seemed "real nervous." McCullen, who had been working at this job for over two years, became suspicious and told appellant that she could not leave the building without first running her purse through the X-ray device. Appellant disregarded McCullen's instruction and exited the courthouse. McCullen followed and stopped her outside. McCullen testified, "Basically I told her that we were still going to need to run her purse through, and at this point it wasn't—she didn't really have a choice in the matter." By this time, McCullen had been joined by Richardson. Appellant agreed to reenter the courthouse with the officers, telling McCullen that "it was going to set off the metal detector." When appellant's purse passed through the X-ray device, the officers could see the image of a pistol. Richardson opened the purse and seized a loaded .22 caliber pistol.

At a second hearing one month later, McCullen testified that appellant's actions led him to believe that there was a "good possibility" she was armed. Asked to describe these actions, McCullen answered:

A. It was that when she came in, she got a very surprised and scared expression on her face, and then tried to go around the security like she was entering through the JP Five door.

Q. And then what did she do?

A. Then she turned around and started to leave. When we asked her where she needed to go, she said she needed to go to the fifth floor.

. . . . .

A. We told her how to get to the fifth floor, and at that point she said, "No, I need to go back out to my car first," and this is something that we have seen a lot of other times. That's when we know somebody usually has something in their purse.

McCullen testified that on approximately fifty occasions, he had seen a similar expression on the face of a person before discovering a weapon or drugs. He acknowledged on cross-examination, however, that he had seen the same expression on persons who did not prove to have a weapon or contraband.

Richardson also testified at the second hearing. He stated that appellant was stopped because, "We wanted to run [the purse] through the x-ray machine and see if there was a weapon or contraband in it."

### Discussion

■ It is undisputed that appellant was seized when she was stopped and made to reenter the courthouse. *See California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690 (1991) (person is seized for purpose of Fourth Amendment when she yields to officer's show of authority); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App.1995) (adopting *Hodari D.* for purposes of article I, section 9). It is also undisputed that passing appellant's purse through the X-ray device was a search. *See United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) ("search" occurs when reasonable expectation of privacy is infringed); *Cullen v. State*, 832 S.W.2d 788, 793 (Tex.App.—Austin 1992, pet. ref'd) (same); *and see* 4 Wayne R. La-Fave, *Search and Seizure*, § 10.6(e) (4th ed. 1996) (hereafter cited as "LaFave"). In her motion to suppress, appellant complained that she was seized and searched in violation of the constitutions of Texas and the United States. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex.Code Crim. Proc. Ann. art. 38.23(a) (West Supp.1996).[2] The district court overruled the motion and made written

---

**2.** With an exception that is not relevant to our disposition of this appeal, appellant does not argue that the guarantee against unreasonable searches and seizures found in article I, section 9

is broader than that of the Fourth Amendment. *See Morehead v. State*, 807 S.W.2d 577, 579 n. 1 (Tex.Crim.App.1991).

findings and conclusions. The court concluded that appellant's purse was lawfully searched pursuant to a valid administrative scheme to secure the courthouse and, alternatively, that appellant was lawfully detained and searched because the officers had a reasonable suspicion that appellant was armed. Our review of the court's findings and conclusions, both factual and legal, is limited to determining whether the court abused its discretion. *DuBose v. State,* 915 S.W.2d 493, 496–97 (Tex.Crim.App.1996).

## 1. Administrative search.

■ The use of metal detectors and X-ray machines to screen the persons and immediate possessions of those boarding commercial aircraft or entering government buildings has been upheld as a form of administrative search. *See* 4 LaFave, §§ 10.6(c), 10.7(a) (discussing cases). In her first point of error, however, appellant contends the district court erred by upholding her detention and search on this basis. Appellant urges, among other things, that the actions of McCullen and Richardson exceeded the lawful scope of a limited security screening. The State concedes this point.

■ Because administrative searches are conducted without warrant or probable cause, they must be carefully limited in time, place, and scope. *New York v. Burger,* 482 U.S. 691, 703, 107 S.Ct. 2636, 2644, 96 L.Ed.2d 601 (1987); *Santikos v. State,* 836 S.W.2d 631, 633 (Tex.Crim.App.1992). To meet the test of reasonableness, an administrative screening search must be as limited in its intrusiveness as is consistent with satisfaction of the administrative need that justifies it. *United States v. Davis,* 482 F.2d 893, 910 (9th Cir.1973). When a limited check for weapons becomes a general search for evidence of crime, it can no longer be justified as an administrative search but must satisfy the warrant and probable cause requirements of the Fourth Amendment. *United States v. $124,570 U.S. Currency,* 873 F.2d 1240, 1247 (9th Cir.1989); *Davis,* 482 F.2d at 911–12.

It has been held that an airport screening search of the persons and immediate possessions of persons boarding aircraft is reasonable under the Fourth Amendment only if each prospective boarder retains the right to leave rather than submit to the search. *Davis,* 482 F.2d at 912. This is because the need to prevent weapons or explosives from being carried aboard aircraft cannot justify the search of a person who elects not to board. *Id.* at 911–12. The same reasoning applies to a screening search of persons entering a public building. The need to exclude weapons that justifies the administrative search cannot justify the compelled search of a person who elects not to enter the building.

The district court found that the screening of persons entering the Travis County Courthouse serves "a very strong governmental interest, which is preserving the peace and sanctity of the courthouse where citizens can come and take care of important business unfettered and unworried about being shot or intimidated or harassed by armed people." [3] Preserving the peace and sanctity of the courthouse cannot justify pursuing appellant after she left the building, stopping her, and compelling her to return and submit to an X-ray of her purse. The officers' actions transformed the screening process into a general search for evidence of crime. In fact, McCullen and Richardson testified that they were looking for drugs as well as a weapon. We agree with appellant and the State that the officers' actions, however well-intentioned, cannot be upheld constitutionally under the administrative search rubric, and hold that the district court abused its discretion by doing so. Point of error one is sustained.

## 2. Waiver of rights.

At the suppression hearing, the State argued that appellant waived her Fourth Amendment rights and consented to a search of her person and belongings when she entered the courthouse. Although the district court did not rely on this waiver theory in

---

**3.** Appellant complains that neither the purpose nor the need for the courthouse security system is shown by the record. We will assume, however, that the district court's finding, which appears self-evident, was accurate.

overruling the motion to suppress, appellant challenges this theory in her second point of error. In reply, the State again concedes that the search cannot be justified on this basis.

A person's consent to a warrantless search must be voluntary to be constitutionally valid. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *DuBose,* 915 S.W.2d at 496. Appellant did not voluntarily submit to the search of her purse. If the search is to be upheld on a waiver theory, it must be held that she impliedly and irrevocably waived her Fourth Amendment rights when she walked past the warning sign and entered the courthouse. We decline to so hold.

Some courts have upheld security searches on an implied consent theory, but not without criticism. 4 LaFave, § 10.6(g). Under this theory, the consent given for a security search cannot exceed the rationale of the search. *$124,570 U.S. Currency,* 873 F.2d at 1247. If appellant impliedly waived her Fourth Amendment rights by entering the courthouse, she did so only to the extent necessary to effect the lawful purpose of the administrative security scheme. We have held that the search of appellant's purse exceeded that purpose. Thus, the search was not within the scope of the alleged waiver of rights. Point of error two is sustained.

### 3. Investigative detention.

The district court's alternative basis for overruling appellant's motion to suppress was that the incident giving rise to the discovery of the pistol was a lawful "stop and frisk" under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An officer may detain a person for investigatory purposes (a *"Terry* stop") if, based on the totality of the circumstances, the officer has a particularized and objective basis for suspecting the person detained of criminal activity. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *Giossi v. State,* 831 S.W.2d 887, 889 (Tex.App.—Austin 1992, pet. ref'd). If the circumstances give the officer reason to believe that the person detained is armed and dangerous, he may conduct a limited search of the outer clothing of the person to discover weapons. *Terry,* 392 U.S. at 26–27, 30–31, 88 S.Ct. at 1882–83, 1884–85; *Spillman v. State,* 824 S.W.2d 806, 811 (Tex.App.—Austin 1992, pet. ref'd). This frisk for weapons may be extended to a purse under the appropriate circumstances. *Worthey v. State,* 805 S.W.2d 435, 439 (Tex.Crim.App.1991).

In her third point of error, appellant contends that McCullen was not authorized to detain her for investigation because he was a private citizen and not a peace officer. *Garner v. State,* 779 S.W.2d 498, 501 (Tex.App.—Fort Worth 1989), *pet. ref'd,* 785 S.W.2d 158 (Tex.Crim.App.1990). Appellant also argues that under the Texas Constitution, an officer may make a *Terry* stop only when the suspected crime involves imminent danger of violence. Because of our disposition of point of error four, we do not reach these contentions. For the purposes of this opinion, we assume that McCullen was acting as an agent of the State and that his actions were therefore governed by the Fourth Amendment and article I, section 9. *Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2048–49, 29 L.Ed.2d 564 (1971); *State v. Comeaux,* 818 S.W.2d 46, 49 (Tex.Crim.App. 1991).

By her fourth point of error, appellant contends that McCullen did not have a constitutionally adequate basis for detaining her. To justify an investigatory detention, an officer must have specific articulable facts which, in light of the officer's experience and personal knowledge, together with other inferences from those facts, reasonably warrant the intrusion on the freedom of the person detained. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App.1983); *Giossi,* 831 S.W.2d at 889. When the facts are as consistent with innocent activity as with criminal activity, a detention based on those facts is unlawful. *Johnson,* 658 S.W.2d at 626; *Giossi,* 831 S.W.2d at 889.

The State cites five factors that it contends gave McCullen reasonable suspicion to believe that appellant was unlawfully carrying a weapon:

1. Appellant "reacted in a surprised and fearful manner upon seeing the securi-

ty machines." In addition, appellant seemed "real nervous" when McCullen spoke to her.

2. Appellant "surreptitiously attempted to enter" the justice of the peace courtroom "without passing through security."

3. Appellant "curiously informed McCullen that she needed to get to the 5th floor while seemingly ignoring her obligation to pass through security."

4. When told by McCullen that she would have to pass through the security devices, appellant "abruptly expressed the need to leave the courthouse."

5. When McCullen asked appellant to permission to inspect her purse, she "tersely refused and walked out of the courthouse."

 With respect to the first of these factors, McCullen acknowledged that a person who unexpectedly encountered the security machines might be surprised. Moreover, it is not necessarily indicative of guilt that a person is nervous or looks around at her surroundings. *Montano v. State*, 843 S.W.2d 579, 582 (Tex.Crim.App.1992). Nervousness when confronted by a police officer is as indicative of innocence as of guilt. *Daniels v. State*, 718 S.W.2d 702, 707 (Tex. Crim.App.1986).

There is no evidence that appellant attempted to enter the justice of the peace courtroom surreptitiously or to support the State's implied assertion that appellant sought to reach the fifth floor without being screened. The State does not explain why it was "curious" for appellant to answer McCullen when he asked her where she was going.

We also find no evidence to support the claim made by the State in its fourth and fifth factors that appellant was "terse" and "abrupt" in her manner. In any event, appellant had every right to walk away from McCullen and return to her car unless McCullen had adequate grounds to detain her. *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *Gurrola v. State*, 877 S.W.2d 300, 302 (Tex.Crim.App.1994). It would annul the constitutional guarantee against unreasonable searches and seizures to hold that McCullen was entitled to detain appellant and search her purse merely because she did not want him to.

In its written findings and conclusions, the district court cited *Terry, Worthey,* and *Holladay v. State*, 805 S.W.2d 464 (Tex.Crim. App.1991), as supporting its conclusion that appellant was lawfully detained. In *Terry*, a police officer watched Terry and another man stand on a street corner for ten to twelve minutes. The two men would alternately leave the corner and walk along an identical route, pausing to stare into the window of a particular store. They did this approximately twenty-four times. After each completion of this route, the men conferred on the corner. At one conference, they were joined by a third man who quickly left. Terry and his companion soon followed, joining the third man a few blocks away. The Supreme Court concluded that this behavior warranted stopping Terry for further investigation. 392 U.S. at 23, 88 S.Ct. at 1881.

In *Worthey*, San Antonio police officers were executing a search warrant at 3:00 a.m. when a vehicle stopped at the residence being searched. Worthy and a companion got out of the vehicle and walked to the front porch, where they encountered two officers who identified themselves and told them to keep their hands where they were. Worthy immediately clutched the purse she was carrying and turned so that the purse and her right hand were away from the officers. One of the officers took the purse from her and felt it for weapons. The Court of Criminal Appeals held that the facts and circumstances warranted this "frisk" of the purse. 805 S.W.2d at 439.

*Holladay* was an airport drug search case. Two Houston police officers with extensive experience on the "airport detail" saw Holladay deplane, with another man, from a flight from Miami, a known drug source city. The two men scanned the lounge area and appeared to be nervous. One of the officers engaged Holladay in conversation, during which he lied about arriving on a flight from Miami and about traveling with the other man. Holladay was nervous when he produced his driver's license at the officer's re-

quest. The Court of Criminal Appeals concluded that while none of these facts alone supported a finding of reasonable suspicion warranting an investigatory detention, they did so when considered together. 805 S.W.2d at 473.

Unlike *Worthey*, appellant's encounter with McCullen did not occur in a place and under circumstances that were inherently suspicious. Appellant was not at the residence of a suspected drug dealer in the middle of the night, but in the entryway of a public building during regular business hours. McCullen testified that appellant made no sudden movements or furtive gestures. Unlike the suspect in *Terry*, appellant did not loiter inside the courthouse doors or give signs of "casing" the building for some criminal purpose. Unlike the officer in *Holladay*, McCullen had no reason to suspect appellant based on her whereabouts or associates, and appellant did not tell McCullen a lie. All McCullen knew was that appellant wanted to return to her car before passing through security and going about her business in the courthouse.

McCullen and Richardson testified that they suspected that appellant had a weapon or contraband in her purse. But even in the absence of bad faith, a detention based on a mere hunch or unparticularized suspicion is unconstitutional. *Gurrola*, 877 S.W.2d at 302; *Holladay*, 805 S.W.2d at 469. To justify a finding of reasonable suspicion adequate to warrant an investigative detention, the suspect's conduct must be sufficiently distinguishable from that of innocent people as to clearly set her apart. *Montano*, 843 S.W.2d at 582; *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App.1991). Appellant entered the courthouse, appeared surprised or flustered when she encountered the security checkpoint, then turned to leave. When the security guard asked if he could help her, she seemed nervous and told him that she was going to the fifth floor but wanted to return to her car before she did so. There was nothing in appellant's words or conduct as described in this record that clearly set her apart from persons engaged in innocent activity.

A trial court's ruling on a motion to suppress evidence is an abuse of its discretion when no reasonable view of the record could support the court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *DuBose*, 915 S.W.2d at 497–98. Applying this test to the record before us, the district court's conclusion that the officers had a particularized and objective basis for suspecting appellant of criminal activity was an abuse of its discretion. Point of error four is sustained.

### 4. Probable cause and self-incrimination.

In points of error five and six, appellant contends that McCullen did not have probable cause to arrest and search her. In point of error seven, she contends that her privilege against self-incrimination was violated when she was forced to pass her purse through the X-ray machine. Because of our disposition of point of error four, we do not reach these contentions.

### Conclusion

We do not hold that it is unconstitutional to screen persons entering a courthouse for weapons. We do not hold that it is unconstitutional for a security officer to detain or frisk a person entering a courthouse when he has a reasonable suspicion that the person is armed. We hold only that the detention and search of appellant in this cause was not shown to be justified by the need for courthouse security or by a reasonable suspicion of criminality.

The judgment of conviction is reversed and the cause is remanded to the district court for new trial.

POWERS, Justice, dissenting.

When reviewing a ruling on a motion to suppress evidence, we must view the evidence in the light most favorable to the trial court's legal conclusion. *DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex.Crim.App.1996). We may reverse the court's ruling as an abuse of discretion only if no reasonable view of the record supports it. *Id.* In my opinion, the majority fails to accord the district court the deference to which it is entitled.

At the second hearing on appellant's motion to suppress, McCullen testified that appellant "tried to go around the security like she was entering through the JP Five door." I believe this testimony may reasonably be understood to mean that appellant attempted to evade the security screening devices by pretending to enter the hallway from the door of the justice of the peace courtroom. Such a deliberate effort to avoid the security checkpoint was a reasonable and articulable basis for suspecting that appellant had a weapon in her purse. I therefore cannot hold that the district court abused its discretion in concluding that the officers were legally justified in detaining appellant and "frisking" her purse.