Candace Waggoner WOODS, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–95–00491–CR.

Court of Appeals of Texas,
Austin.

June 25, 1998.

Keith Hampton, Austin, for appellant.

Ronald Earle, District Attorney, Matthew H. Devlin, Assistant District Attorney, Austin, for appellee.

Before POWERS, JONES and B.A. SMITH, JJ.

JONES, Justice.

Our opinion and judgment in this cause dated June 11, 1998, are withdrawn.

On original submission, this Court reversed appellant's conviction for unlawfully carrying a firearm on the ground that the incriminating evidence, a pistol in appellant's purse, was discovered and seized following an unlawful detention. *Woods v. State*, 933 S.W.2d 719 (Tex.App.—Austin 1996) (*Woods I*). On the State's petition for discretionary review, the Court of Criminal Appeals overruled the case authority on which we had relied, reversed our judgment, and remanded the appeal to us for further proceedings. *Woods v. State*, 956 S.W.2d 33 (Tex.Crim. App.1997) (*Woods II*). After reexamining the detention issue in light of the Court of Criminal Appeals' opinion, we now conclude that the detention was lawful and will overrule appellant's contention to the contrary. We will also overrule the points of error not addressed in our original opinion and will affirm the district court's judgment of conviction.

## Background

The relevant facts were described in our original opinion:

On the day in question, appellant entered the Travis County Courthouse through the east, or main, entrance, passing as she did so a sign stating, "You are entering a security screening area. All persons and baggage are subject to a

search." Inside the courthouse and a few feet from the entrance, appellant was confronted by a metal detector and an X-ray machine. Operating these machines were Kevin McCullen, a private security guard employed by the Travis County Sheriff's Department, and Billy Richardson, a deputy sheriff and McCullen's supervisor. McCullen testified that appellant had a "real surprised look, a scared look" when she saw the machines. Appellant "turned to her left and started to enter—and tried to go towards Room 112, which is the JP Five courtroom," the entrance to which was apparently outside the security devices but bore a sign advising that all persons must be screened before entering. Then "she turned around and started to go back out the doors...."

McCullen stopped appellant before she could leave the building and asked if he could help her. She told him that she was trying to get to the fifth floor. McCullen informed appellant that she would have to pass through the metal detectors to reach the elevators. Appellant told McCullen that she first had to go back to her car. According to McCullen, appellant seemed "real nervous." McCullen, who had been working at this job for over two years, became suspicious and told appellant that she could not leave the building without first running her purse through the X-ray device. Appellant disregarded McCullen's instruction and exited the courthouse. McCullen followed and stopped her outside. McCullen testified, "Basically I told her that we were still going to need to run her purse through, and at this point it wasn't—she didn't really have a choice in the matter." By this time, McCullen had been joined by Richardson. Appellant agreed to reenter the courthouse with the officers, telling McCullen that "it was going to set off the metal detector." When appellant's purse passed through the X-ray device, the officers could see the image of a pistol. Richardson opened the purse and seized a loaded .22 caliber pistol.

At a second hearing one month later, McCullen testified that appellant's actions led him to believe that there was a "good possibility" she was armed. Asked to describe these actions, McCullen answered:

A. It was that when she came in, she got a very surprised and scared expression on her face, and then tried to go around the security like she was entering through the JP Five door.

Q. And then what did she do?

A. Then she turned around and started to leave. When we asked her where she needed to go, she said she needed to go to the fifth floor.

. . .

A. We told her how to get to the fifth floor, and at that point she said, "No, I need to go back out to my car first," and this is something that we have seen a lot of other times. That's when we know somebody usually has something in their purse.

McCullen testified that on approximately fifty occasions, he had seen a similar expression on the face of a person before discovering a weapon or drugs. He acknowledged on cross-examination, however, that he had seen the same expression on persons who did not prove to have a weapon or contraband.

Richardson also testified at the second hearing. He stated that appellant was stopped because, "We wanted to run [the purse] through the x-ray machine and see if there was a weapon or contraband in it."

*Woods I,* 933 S.W.2d at 721–22.

It is clear that appellant was seized when she was stopped and made to reenter the courthouse, and that passing her purse through the X-ray device was a search. *See id.* at 722. On original submission, we sustained appellant's first point of error, holding that the officers' actions exceeded the lawful scope of a limited administrative search. *Id.* at 723. We also sustained her second point of error, holding that appellant did not waive her Fourth Amendment rights and consent to the search of her person and belongings when she entered the courthouse. *Id.* at 724. Neither of these holdings was challenged by the State in its petition for discretionary

review and we will not address these points further. The subject of the State's petition and the reason for the remand by the Court of Criminal Appeals was our holding on appellant's fourth point of error: that the facts and circumstances did not constitutionally warrant the detention of appellant for investigatory purposes. *Id.* at 725–26. It is to that issue that we now return.

## Investigative Detention

■ An officer may detain a person for investigatory purposes if, based on the totality of the circumstances, the officer has a particularized and objective basis for suspecting the person detained of criminal activity. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Stated another way, an officer may stop and briefly detain a citizen for investigative purposes if the officer, in light of his experience, has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). If the circumstances give the officer reason to believe that the person detained is armed and dangerous, he also may conduct a limited search of the outer clothing of the person to discover weapons. *Id.; Spillman v. State,* 824 S.W.2d 806, 811 (Tex.App.—Austin 1992, pet. ref'd). This frisk for weapons may be extended to a purse under appropriate circumstances. *Worthey v. State,* 805 S.W.2d 435, 439 (Tex. Crim.App.1991).

In our original opinion, we relied on case authority holding that an officer's suspicion is not reasonable, and hence a detention based on that suspicion is unlawful, if the facts and circumstances on which the suspicion is based are as consistent with innocent activity as with criminal activity. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App.1983). At a minimum, these cases held, the suspicious conduct must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly set the suspect apart. *Montano v. State,* 843 S.W.2d 579, 582 (Tex.Crim.App.1992); *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App. 1991). We concluded that appellant's conduct as shown in the record before us did not

clearly set her apart from persons engaged in innocent activity. *Woods I,* 933 S.W.2d at 726.

On the State's petition for discretionary review, the Court of Criminal Appeals held that "the 'as consistent with innocent activity as with criminal activity' construct is no longer a viable test for determining reasonable suspicion" and overruled all cases holding to the contrary, expressly including *Johnson* and *Montano. Woods II,* 956 S.W.2d at 36 n. 3, 38. The court held that "the reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity." *Id.* at 38.

■ We do not understand the Court of Criminal Appeals' holding to mean that *any* suspicion based on *any* articulable facts will support a temporary investigative detention. A reasonable suspicion means more than a mere hunch or suspicion. *Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App.1997). Reasonable suspicion requires "that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime." *Id.* (quoting *Viveros v. State,* 828 S.W.2d 2, 4 (Tex.Crim.App.1992)). The articulable facts relied on by the officer must support a reasonable suspicion that activity out of the ordinary is occurring or has occurred, that the detainee is connected to the unusual activity, and that the unusual activity is related to crime. *Id.* A temporary detention is not permissible unless the circumstances objectively support a reasonable suspicion that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* If there are no facts that would make the conduct observed by the officer anything but innocuous, if there does not exist even a significant possibility that the person observed is engaged in criminal conduct, a detention of the person for further investigation is not constitutionally warranted. *See* 4 Wayne R. LaFave, *Search and Seizure,* § 9.4(b), at 149 (4th ed.1996).

The relevant facts and circumstances are not in dispute in this cause, and the resolution of this appeal does not turn on an evaluation of the credibility of a particular witness. Therefore, we review de novo the question whether the totality of the circumstances gave the detaining officer a reasonable, particularized, and objective basis for suspecting that appellant was engaged in criminal activity. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

■ McCullen testified that appellant appeared "surprised and scared" when she encountered the security checkpoint. She "tried to go around the security like she was entering through the JP Five door," then she turned to leave the courthouse. McCullen testified, "[T]his is something we have seen a lot of other times. That's when we know somebody usually has something in their purse." When McCullen asked if he could help her, appellant seemed nervous and told him that she was going to the fifth floor but wanted to return to her car before she did so. He said that in two years at this job, he often had seen a similar expression on the face of a person before discovering a weapon or drugs, although he acknowledged that he had seen the same expression on persons who did not prove to have a weapon or contraband. We conclude that the totality of the circumstances, including appellant's behavior and McCullen's past experience, gave the officer a particularized and objective basis for believing that appellant had a weapon or other contraband in her purse. Because the officer's suspicion was reasonable under the circumstances, the detention was lawful. Point of error four is overruled.[1]

## Other Points of Error

Because we sustained appellant's fourth point of error on original submission, we did not reach her third, fifth, sixth, and seventh points of error. Having now overruled the fourth point on remand from the Court of Criminal Appeals, we must address the remaining points of error.

In her third point of error, appellant contends that McCullen was not authorized to detain her for investigation because he was a private citizen and not a peace officer. Appellant argues that *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), authorizes temporary investigatory detentions only by the police and may not be invoked to justify such detentions by private persons. Appellant's argument echoes the reasoning of the court of appeals in *Garner v. State*, 779 S.W.2d 498, 501 (Tex.App.—Fort Worth 1989) ("a private citizen does not have the authority to make a *Terry* stop"), *pet. ref'd* 785 S.W.2d 158 (Tex.Crim.App.1990).

■ Two factors must be considered when determining whether a person is acting privately or as an agent of the State: (1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the person intended to assist law enforcement efforts or instead intended to further his own ends. *Stoker v. State*, 788 S.W.2d 1, 11 (Tex.Crim.App.1989). Although he was a private security guard, McCullen was employed by the Travis County Sheriff's Department and was working with and under the supervision of a deputy sheriff. McCullen testified that he had detained other persons under similar circumstances on numerous occasions. The evidence clearly supports the conclusion that the sheriff's department knew of and acquiesced in such detentions by McCullen. Further, appellant's detention was obviously intended to assist law enforcement efforts and did not further any private interest of McCullen. Thus, the premise of appellant's argument, that McCullen was acting as a private individual when he detained her, is not supported by the record.

■ Appellant's argument would fail even if McCullen had not been acting as an agent of the State when he detained her. Appellant, like the court in *Garner*, fails to consider that the federal and state constitutions only protect against unreasonable searches and seizures by agents of the government, and have no application to purely private searches or seizures. *State v. Comeaux*, 818

---

1. Although we now uphold the detention of appellant in light of the opinion in *Woods II*, we reaffirm our statement in *Woods I* that McCullen was not entitled to detain appellant merely because she did not want him to. *Woods I*, 933 S.W.2d at 725.

S.W.2d 46, 49 (Tex.Crim.App.1991); *Bodde v. State,* 568 S.W.2d 344, 352–53 (Tex.Crim.App. 1978); *Carroll v. State,* 911 S.W.2d 210, 219 n. 5 (Tex.App.—Austin 1995, no pet.); *see* U.S. Const. amend. IV; Tex. Const. art. I, § 9. *Terry* does not discuss the authority of private persons to make temporary investigative detentions for the simple reason that it is a Fourth Amendment case, and the Fourth Amendment does not apply to private persons. If McCullen was acting privately when he detained appellant, his conduct did not implicate either the Fourth Amendment or article I, section 9, and *Terry* is irrelevant. *See Garcia v. State,* 769 S.W.2d 345, 348 (Tex.App.—Houston [1st Dist.] 1989, no pet.).

The Texas statutory exclusionary rule applies to evidence unlawfully obtained by a private individual not acting as an agent of the government *State v. Johnson,* 939 S.W.2d 586, 587–88 (Tex.Crim.App.1996); *see* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp.1998). But before article 38.23(a) may be invoked, it must be shown that the evidence in question was obtained in violation of the constitution or laws of either the United States or Texas. *See Carroll,* 911 S.W.2d at 219. A temporary detention by a private individual does not violate either the Fourth Amendment or article I, section 9, and appellant does not assert any other constitutional or statutory violation.

Finally, appellant argues that a temporary investigative detention is permissible only when the crime suspected involves an imminent threat of violence to either persons or property. Appellant concedes that there is no federal or state authority supporting this contention, but urges that article I, section 9 of the Texas Constitution should be so interpreted. *See Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991) (Texas Constitution may place stricter limits on searches and seizures than United States Constitution).

To determine whether the Texas Constitution provides greater protection than its federal counterpart, several factors should be considered: the constitutional text, the framer's intent, the history and prior application of the constitutional provision, comparable jurisprudence from other states, and the practical policy considerations behind the constitutional provision. *See Autran v. State,* 887 S.W.2d 31, 37 (Tex.Crim.App. 1994). Appellant's brief discusses none of these factors. In fact, other than to complain that *Terry* has been interpreted too broadly, appellant offers no argument in support of her contention. We will not make appellant's arguments for her. Moreover, appellant's proposed reading of the Texas Constitution would not benefit her in this cause. Unlawfully carrying a firearm into a courthouse is a crime that carries with it an imminent threat of violence. Point of error three is overruled.

In point of error six, appellant argues that by stopping her and requiring her to reenter the courthouse, McCullen did not merely detain her for investigation but instead arrested her. Appellant contends this arrest was unlawful because McCullen did not have probable cause to arrest.

A person is arrested when she has been actually placed under restraint or taken into custody. Tex.Code Crim. Proc. Ann. art. 15.22 (West 1977). It has been held that an arrest occurs at the moment a person's liberty of movement is restricted or restrained. *Hoag v. State,* 728 S.W.2d 375, 379 (Tex.Crim.App.1987). This broad definition of arrest must be read in light of a police officer's constitutional authority to temporarily detain a person he reasonably suspects is involved in criminal activity. Whether a particular seizure of a person is an arrest or merely a temporary detention is a matter of degree, and turns on such factors as the length of the detention, the amount of force employed, and whether the officer actually conducts an investigation. *See Rhodes v. State,* 945 S.W.2d 115, 117 (Tex.Crim.App. 1997) & 119–20 (Meyers, J., concurring and dissenting); *Burkes v. State,* 830 S.W.2d 922, 925 (Tex.Crim.App.1991); *Amores v. State,* 816 S.W.2d 407, 412 (Tex.Crim.App.1991). An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, and the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Florida v. Royer,*

460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

In this cause, McCullen promptly investigated his suspicion that appellant had a weapon in her purse. He used no greater force than was reasonably necessary to effect the goal of the stop. Returning appellant to the courthouse lobby in order to pass her purse through the X-ray machine was the least intrusive means available to confirm or refute his suspicions. McCullen's conduct did not exceed the lawful scope of a temporary investigative detention and did not constitute an arrest. Point of error six is overruled.

Appellant contends in point of error five that passing her purse through the X-ray device was not the limited search for weapons authorized by *Terry* but an unlimited search for which probable cause was required. Once again, appellant urges that the search was unlawful because McCullen did not have probable cause.

Under *Terry*, a police officer who has lawfully detained a person for investigation may conduct a limited search for weapons if the officer has reason to believe that the person may be armed and dangerous. 392 U.S. at 27, 88 S.Ct. 1868. In *Worthey*, a police officer "frisked" the purse of a female detainee by feeling the outside of the purse with his hand. Feeling something solid, the officer looked inside the purse and discovered methamphetamine. Although the officer did not have probable cause to search the purse, the Court of Criminal Appeals found that he did have a reasonable belief that the defendant could have been armed and dangerous and upheld the search on that basis. Because the officer confined his search to what was minimally necessary to investigate whether the defendant carried a weapon in her purse, he did not exceed the scope of his authority under *Terry*. 805 S.W.2d at 438–39.

Appellant was detained for the purpose of investigating McCullen's reasonable suspicion that she was unlawfully carrying a weapon or other contraband in her purse. Because he had reasonable grounds for believing that appellant had a weapon in her purse, McCullen was authorized under *Terry* to conduct a limited weapons search for his own safety. The search method employed—passing the purse through a device specifically designed to discover weapons in purses and briefcases—was less intrusive and more narrowly drawn than the search upheld in *Worthey*. We hold that the search of appellant's purse in this cause did not exceed the lawful scope of a limited weapons search. Point of error five is overruled.

Finally, appellant contends that requiring her to disclose the contents of her purse violated her privilege against self-incrimination under the Texas Constitution. Tex. Const. art. I, § 10. Article one, section ten provides that the accused in a criminal prosecution "shall not be compelled to give evidence against himself." In contrast, the Fifth Amendment to the United States Constitution provides that a criminal defendant cannot be compelled "to be a witness against himself." Appellant argues that the use of the word "evidence" instead of "witness" means that the Texas Constitution extends the privilege against self-incrimination to nontestimonial evidence, such as the pistol found in appellant's purse.

This argument has been presented to and rejected by both the Court of Criminal Appeals and this Court. *See Olson v. State*, 484 S.W.2d 756, 772 (Tex.Crim.App.1972) (opinion on motion for rehearing); *Nottingham v. State*, 908 S.W.2d 585, 590 (Tex.App.—Austin 1995, no pet.). In *Olson*, the court held that "the Texas constitutional self-incrimination privilege extends its protection to testimonial compulsion." 484 S.W.2d at 772. More recently, the Court of Criminal Appeals has twice rejected the contention that article one, section ten provides broader protection than the Fifth Amendment merely because of differences in language. *Miffleton v. State*, 777 S.W.2d 76, 80 (Tex.Crim.App.1989); *Thomas v. State*, 723 S.W.2d 696, 703 (Tex.Crim.App. 1986). Point of error seven is overruled.

Appellant's motion for rehearing is overruled and the judgment of conviction is affirmed.