

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00306-CR

Oscar Alan Rios **CONTERAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 14, Bexar County, Texas
Trial Court No. 471379
The Honorable Susan Skinner, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Irene Rios, Justice

Delivered and Filed:  February 15, 2017

AFFIRMED

A jury found appellant, Oscar Alan Rios Conteras, guilty of possession of two ounces or less of marihuana within 1,000 feet of a school, a drug-free zone. The trial court assessed punishment at two days' confinement and a $50 fine. On appeal, appellant asserts the trial court erred by denying his motion to suppress because the police officers lacked probable cause to arrest and reasonable suspicion to detain. We affirm.

## BACKGROUND

Only two witnesses testified at trial, both San Antonio Independent School District Police Officers. Officer Rene Cano testified he was monitoring student activity on security cameras at Sam Houston High School at approximately 2:45 p.m. on a school day when he observed two students who were not in class standing in an area known for heavy narcotics use. Officer Cano notified his partner, Officer Daniel Cortinas who was in his patrol car on campus, and a school vice principal, Miguel Martel, about the students. While Officer Cortinas drove to the students' location, Officer Cano and Martel walked to their location. One of the students was appellant and the other a young man by the name of James Plata.

Officer Cortinas testified appellant and Plata were in the closed-off, back concession area of the school, and no student should be in the area during school hours. Cortinas said he smelled burnt marijuana when he approached appellant and Plata, and no one else was in the area. Because he smelled the odor of burnt marijuana, Cortinas told appellant and Plata they were being detained for a possible narcotics violation. Cortinas said both students gave him verbal consent to search their person, and he found a bag of tobacco rolling papers on appellant. When he asked them why they were in the area, appellant said he had brought his car to school and they were leaving for the day. On cross-examination, Cortinas said appellant was detained for investigation and not under arrest, although appellant was not free to leave.

Officer Cano testified that when he arrived, he learned appellant did not have a driver's license. Therefore, Cano confiscated the car keys from appellant and told appellant he could not drive his car. Cano said that because he needed to obtain the car's VIN number to run the license plates, everyone walked in the direction of appellant's car. As everyone walked to appellant's car, appellant said, "Sir, I have marijuana in the car in the center console. You can check." Cano said this statement was not the result of any questioning, he did not take appellant's car keys for the

purpose of searching his car, and he took appellant's car keys only because it was a violation of State law to operate a motor vehicle without a license. Once at the car, Cano said he did not open the car doors, but looked inside where he saw, in plain view on the driver's side armrest, a hand-rolled marijuana cigarette. Cano said he placed appellant in handcuffs after he saw the marijuana cigarette in the car. Cano then opened the car door and looked into the center console where he found a clear, plastic bag containing a green leafy substance that he believed to be marijuana.

On cross-examination, Cano conceded that when he arrived in the parking lot, Cortinas had already detained appellant and appellant was not free to leave. However, Cano said appellant was not under arrest and was not in handcuffs. When asked if he had any suspicion of whether appellant was engaged in criminal activity, Cano replied he smelled marijuana within close proximity to the two individuals. Cano noted his police report stated only that there was the odor of burnt marijuana "in the area" and not on appellant.

After hearing the testimony of both officers, the trial court denied appellant's motion to suppress.

## DISCUSSION

On appeal, appellant asserts the trial court erred by denying his motion to suppress because (1) appellant was under arrest and the officers lacked probable cause to arrest him based only on the smell of burnt marijuana, and (2) if appellant was only detained and not under arrest, the officers lacked reasonable suspicion to detain him.

### A. Standard of Review

We review a trial court's decision to deny a motion to suppress for an abuse of discretion. *Ex Parte Moore*, 395 S.W.3d 153, 158 (Tex. Crim. App. 2013); *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). A trial court's denial of a motion to suppress is reviewed under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

First, we afford almost complete deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We afford the same deference with respect to the trial court's rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Id.* Second, we conduct a de novo review of mixed questions of law and fact that do not hinge on credibility or demeanor determinations. *Id.* When, as here, the trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's rulings, and will assume it made implicit findings that are supported by the record. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016). We will sustain the trial court's decision if we conclude the decision is correct under any applicable theory of law. *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013).

When seeking to suppress evidence on the ground that the evidence was obtained in violation of the Fourth Amendment, a defendant has the initial burden of rebutting "the presumption of proper police conduct." *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007).

**B.**     **Reasonable Suspicion to Detain**

"There are three distinct categories of interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests." *Crain*, 315 S.W.3d at 49. "In determining which category an interaction falls into, courts look at the totality of the circumstances." *Id.* In the present case, neither party contends the interaction was a consensual encounter. On appeal, appellant asserts the officers did not merely detain him; instead, they arrested him.

By definition, "[a] person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant or arrest, or by an officer or person arresting without a warrant." TEX. CODE CRIM. PROC. ANN. art. 15.22 (West 2015). "We evaluate whether a person has been detained to the degree associated with arrest on an ad hoc, or case-by-case, basis." *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). "In making the custody determination, the primary question is whether a reasonable person would perceive the detention to be a restraint on his movement 'comparable to . . . formal arrest,' given all the objective circumstances." *Id.* This "restraint of liberty" standard, however, is not adequate when distinguishing between an arrest and an investigative detention because it is a characteristic common to both. *Francis v. State*, 922 S.W.2d 176, 179 (Tex. Crim. App. 1996) (J. Baird, concurring and dissenting).

A police officer may detain a person for investigatory purposes without placing the person under arrest. *See Crain*, 315 S.W.3d at 49. An investigative detention, which implicates Fourth Amendment protections, "occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave." *Id.* "[N]ot being free to leave is an inherent feature of a temporary detention. *State v. Whittington*, 401 S.W.3d 263, 273 (Tex. App.—San Antonio 2013, no pet.); *see also Sheppard*, 271 S.W.3d at 289 ("That is precisely what *Terry* permits—a temporary detention, in which the person is not free to leave, while the police officer investigates whether a crime has been committed.").

The standard for distinguishing between an arrest and investigative detention is not always clear because both involve seizures and the distinction between these seizures rests on a fact-specific inquiry rather than clearly delineated criteria. *See Morris v. State*, 50 S.W.3d 89, 94 (Tex. App.—Fort Worth 2001, no pet.). Whether a person is under arrest or subject to a temporary detention is a matter of degree and several factors often come into play in considering whether a

particular interaction amounted to an arrest or a detention, including the amount of force displayed, the duration of detention, the efficiency of the investigative process, whether it was conducted at the original location or the person was transported to another location, and whether the officer told the detained person that he or she was under arrest or was being detained only for a temporary investigation. *See State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008); *Woods v. State*, 970 S.W.2d 770, 775 (Tex. App.—Austin 1998, pet. ref'd); *Whittington*, 401 S.W.3d at 273 ("a detention can be converted to an arrest when an individual's freedom of movement is almost completely restrained by unreasonable force, an unreasonably strong showing of authority, or an absence of the need to maintain the status quo or officer safety").

Here, Officer Cortinas approached appellant and Plata on school grounds, smelled the odor of burnt marijuana, and told both students they were being detained for a possible narcotics investigation. However, neither Officer Cortinas nor Officer Cano displayed any show of force, handcuffed appellant, or otherwise physically deprived appellant of his freedom of action in a significant way. Little is known about the length of time between Officer Cortinas's initial approach and appellant's statement to Officer Cano about the marijuana, but Cano testified appellant was detained by Cortinas for only five to ten minutes before he and the assistant principal arrived. There is no evidence either officer paused in the investigation, asked either student to wait, or were inefficient in questioning the students. Although appellant made his spontaneous statement while everyone was walking toward appellant's car—and, therefore, they were not in the location where the students were originally detained—the record does not indicate how far or how long everyone walked before appellant made his statement. Viewing this evidence in the light most favorable to the trial court's implied finding, the trial court could have concluded appellant was not being detained to a degree associated with an arrest, and instead, the officers were conducting an investigative detention.

In order to conduct an investigative detention, an officer must have "reasonable suspicion." *Brodnex*, 485 S.W.3d at 437. Under the Fourth Amendment, reasonable suspicion exists where the officer has "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This is an objective standard that disregards the subjective intent of the officer and requires only some minimal level of justification for the stop. *Brodnex*, 485 S.W.3d at 437. However, the officer must have more than an inarticulable hunch or mere good-faith suspicion that a crime was in progress. *Crain*, 315 S.W.3d at 52. In deciding whether an officer had a reasonable suspicion, we examine the facts that were available to the officer at the time of the investigative detention. *Brodnex*, 485 S.W.3d at 437. If it is determined there was no reasonable suspicion on which to detain an individual, then the investigative detention violates the Fourth Amendment. *Id.* Although the trial court is the sole factfinder at the suppression hearing, we "review de novo whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain*, 315 S.W.3d at 48-49.

Officer Cortinas testified appellant and Plata should have been in class at the time, and they were in an area on campus where the police "had numerous arrests for illegal activity . . . [i]t's where students go to skip class and engage in that type of activity." When Cortinas made contact with appellant and Plata, they were the only two people in the area, and Cortinas smelled the odor of burnt marijuana. Under the totality of these circumstances, we conclude Cortinas had reasonable suspicion to detain appellant because he had specific articulable facts that led him to believe appellant would soon be or had been engaging in criminal conduct, i.e., the possession of marijuana. *See Glazner v. State*, 175 S.W.3d 262, 266 (Tex. Crim. App. 2005) (when officer opened appellant's truck's door and smelled marijuana, officer acquired reasonable suspicion to

- 7 -

continue detaining appellant because officer, at that point, reasonably believed appellant was or had been engaged in criminal activity); *Taylor v. State*, 20 S.W.3d 51, 56 (Tex. App.—Texarkana 2000, pet. ref'd) (explaining odor of marijuana alone provides reasonable suspicion to justify continuing detention); *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd) (holding smell of marijuana creates reasonable suspicion for officer to continue detention for investigation of drug possession).

When Officer Cano approached where Officer Cortinas had detained appellant, Cano learned appellant was leaving the school premises but did not have a driver's license. Cano then confiscated appellant's car keys, and told appellant he could not drive the car because driving without a license was a traffic violation. *See* TEX. TRANSP. CODE ANN. § 521.021 (West 2013) ("A person, other than a person expressly exempted under [the Texas Transportation Code], may not operate a motor vehicle on a highway in this state unless the person holds a driver's license issued under this chapter.").

Because Cano decided to run the car's license plate and obtain the car's VIN number, he and appellant walked toward appellant's car. During the walk, appellant told Cano there was marijuana in the car's center console. Appellant also gave his consent for a search of the car. There was no evidence of police questioning, coercion, or inducement leading to appellant's oral statement about the marijuana or his consent to search. "Many cases have held that such spontaneous, volunteered statements not made in response to interrogation are admissible, whether or not the defendant is in custody." *Dossett v. State*, 216 S.W.3d 7, 24 (Tex. App.—San Antonio 2006, pet. ref'd).

We conclude that because the officers had reasonable suspicion to detain appellant, his detention did not violate the Fourth Amendment. Therefore, the trial court did not err by denying appellant's motion to suppress.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice

Do not publish