The STATE of Texas

v.

Roger Meloy CARTER.

No. 09–93–058 CR.

Court of Appeals of Texas, Beaumont.

Submitted May 23, 1996.

Decided Nov. 27, 1996.

---

1. We note the change in the law since our opinion in *Phaup v. Boswell,* 731 S.W.2d 625, 627 (Tex.App.—Houston [1st Dist.] 1987, no writ).

Rife S. Kimler, Port Arthur, for appellant.

Tom Maness, Criminal District Attorney, Ramon L. Rodriguez, Jr., Assistant Criminal District Attorney, Beaumont, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION ON REMAND

BURGESS, Justice.

The State appealed[1] a pre-trial order granting appellee's motion to suppress evidence obtained in the course of an allegedly unlawful search of appellee's person. The trial court granted the motion to suppress finding a lack of probable cause to support the search. This court, one justice dissenting, held the trial court abused its discretion in failing to find probable cause, reversed the trial court's order granting the motion to suppress and remanded the cause for trial. *State v. Carter*, 882 S.W.2d 940 (Tex.App.— Beaumont 1994). The Court of Criminal Appeals vacated the judgment of this court and remanded for further analysis and disposition in accordance with their opinion. *State v. Carter*, 915 S.W.2d 501 (Tex.Crim.App.1996).

In reviewing a ruling on a motion to suppress evidence, "we are deferential to the trial court and will reverse only if it abused its discretion, i.e., if the decision is unsupported by the record." *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App.1996). As recently set forth by the Court of Criminal Appeals in *DuBose v. State*, 915 S.W.2d 493, 496–497 (Tex.Crim.App.1996) (citations omitted):

> At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. The trial judge is also the initial arbiter of the legal significance of those facts. The court of appeals is to limit its review of the trial court's rulings, both as to the facts and the legal significance of those facts, to a determination of whether the trial court abused its discretion. Even if the court of appeals would have reached a different result, as long as the trial court's rulings are at least within the 'zone of reasonable disagreement,' the appellate court should not intercede.

The reviewing court does not engage in its own factual review[2] but merely determines whether the trial judge's fact findings are supported by the record; we address only whether the trial court improperly applied the law to the facts. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). "As long as there is a 'substantial basis' in the record to support the magistrate's (or trial

---

1. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01 (Vernon Supp.1994)

2. Except in very narrow circumstances. *See Meraz v. State*, 785 S.W.2d 146 (Tex.Crim.App. 1990).

court's) ruling, it is impervious to appellate reversal." *Carter*, 915 S.W.2d at 504. The State presented one witness, Detective Alton James Baise of the Port Arthur Police Department and the Jefferson County Narcotics Task Force. Detective Baise testified on March 27, 1992, at approximately 12:00 noon, he received a call from a confidential informant. Baise had used the informant approximately six times in the past and each time received reliable information. The informant told Baise that two black males were in possession of and selling cocaine to passing motorists near Apartment 35 at the Argosy Apartment complex in Port Arthur. The informant described the males as being of heavy build and specifically described their clothing. Baise stated no names were provided and he had no prior information about the two described subjects.

Baise then contacted three other police detectives: Sergeant Duriso, Detective Bienvenu and Detective Levy. Within approximately 30 minutes all three arrived at the police station and met Baise. Baise testified no effort was made to contact a magistrate to secure a search warrant for the two subjects. When asked by the State why no such effort was made, Baise responded, "Basically, if we were to go out there, I was thinking if we were to go out there, locate the subjects and ask the subjects if we could search them, if they denied it, then we would obtain a search warrant." Baise added, with a helpful reminder from the State, he did not think the subjects would remain in the described location for as long as it would take to secure a warrant.

The four detectives went to the Argosy Apartments. Upon arrival, the described subjects were not present at the exact location provided by the informant. Baise testified two individuals very closely matching the description provided by the informant exited Apartment 37. The detectives immediately approached the two subjects and detained them. Baise admitted on cross-examination he normally sets up surveillance when provided with information from informants so as to corroborate the information. Baise stated

the detectives engaged in no such surveillance in this case.

Baise testified the detectives identified themselves and informed the subjects they were being detained because they matched the description of two individuals in possession of and selling cocaine. When asked how the subjects responded, Baise replied, "They both advised myself and the other officers that they weren't selling any cocaine and that we could search them." Baise then concentrated on searching one subject and Detective Levy searched appellee, approximately five yards from Baise. Baise found no contraband on his subject, but Detective Levy advised Baise that appellee had some cocaine in his left, front pants pocket. Detective Levy turned the suspected contraband over to Baise. Baise testified Detective Levy was deceased at the time of the hearing. Baise also stated a written consent to search was obtained from the occupant of Apartment 37. A subsequent search yielded no contraband at that location. The suspected contraband taken from appellee field-tested positive for cocaine and appellee was arrested.

Detective Baise further testified neither appellee nor the other subject tried to run and neither made any kind of furtive or threatening gestures. Neither subject made any verbal threats. When asked if he had any reason to fear for his safety, Baise replied, "I always have a reason to fear for safety when I'm dealing with narcotics." However, all of Baise's testimony belies this assertion as he described both subjects as quite cooperative and non-threatening. Baise also admitted his written offense report did not indicate any fear of the subjects being armed or for his personal safety. Baise testified he could not remember having heard appellee give consent to the search and Baise's report made no mention of either subject consenting to being searched.

The trial court made no written findings of fact but did make verbal observations. In granting appellee's suppression motion, the trial court commented on the lack of probative evidence of appellee's alleged consent to search, on the lack of "suspicious activity" which did not even rise to a "Terry[3] situa-

---

3. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).

tion," and concluded with finding "there was no probable cause at all to walk up and begin searching ... there was no reasonable suspicion that they were doing anything."

The State's brief appears to concede the "consent to search" issue and, instead, focuses on the combination of correct information provided by the reliable confidential informant and exigent circumstances to save the search. This combination, the State contends, provided the probable cause for the search of appellee's person by the detectives. No evidence exists in the record, nor does the State argue, that appellee was under arrest at the time of the search so as to make the search permissible as a search incident to an arrest. We are clearly faced with a warrantless search. Absent consent to search, the detectives were required to have probable cause before executing a search of appellee's person.

■ "Probable cause determinations in warrantless search situations are made using the same standard as in warrant cases." *Rojas v. State,* 797 S.W.2d 41, 43 (Tex.Crim. App.1990). "Probable cause exists when the facts are sufficient to justify the conclusion the property which is the object of the search is probably in the area to be searched." *Id.* When evaluating the question of probable cause, a "totality of the circumstances" test is used. *Matamoros v. State,* 901 S.W.2d 470, 478 (Tex.Crim.App.1995)(citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Under the "totality of the circumstances" approach, an informant's reliability is just one factor in assessing the existence of probable cause. *Gates,* 462 U.S. at 233, 103 S.Ct. at 2329, 76 L.Ed.2d at 545. An informant's "basis of knowledge" is also highly relevant. *Id.*

The Court of Criminal Appeals has held "when a probable cause affidavit specifies a named informant as supplying the information upon which probable cause is based, the affidavit is sufficient *if it is sufficiently detailed to suggest direct knowledge* on the informant's part." *Matamoros,* 901 S.W.2d at 478.

■ The trial court was presented with the confidential informant's reliability, but absolutely no basis for the informant's knowledge was related to Detective Baise. There was no evidence, for example, the informant claimed knowledge to the events by being one of the motorists who recently purchased cocaine from appellee, or by being present during a recent sale of cocaine by appellee, or exactly how the informant is familiar with the substance cocaine. The informant's information was not "sufficiently detailed to suggest direct knowledge" on his part. Furthermore, Baise admitted no independent surveillance was undertaken to corroborate the informant's tip. The trial court was merely presented with the fact that when the detectives arrived at the apartment complex, two individuals closely matching the description of the informant's subjects exited an apartment. Baise and his colleagues made no attempt to observe the actions of the two men to confirm the informant's conclusory statement they were in possession of and selling cocaine to passing motorists.

We hold the trial court did not abuse its discretion in granting appellee's motion to suppress based on the record before us. The trial court did not improperly apply the law, as set out in *Gates,* to the facts. While the information known to Detective Baise permitted the detectives to approach appellee and his companion and detain them for investigative questioning under the guidelines of *Terry,* evidence was lacking for a mere *Terry* "pat-down" much less a full-blown search of either subject. *Terry,* 392 U.S. at 1, 88 S.Ct. at 1868, 20 L.Ed.2d at 889. We therefore overrule the State's single point of error. The trial court's order suppressing the alleged contraband seized from appellee's person is affirmed.

AFFIRMED.

WALKER, Chief Justice, dissenting.

This case was remanded to this Court by our Court of Criminal Appeals, *State v. Carter,* 915 S.W.2d 501 (Tex. Crim App.1996), bearing rather strong language, to wit: "We cannot condone this obstruction of the institutional role of the trial court in our criminal justice system."

Having written the majority opinion, *State v. Carter,* 882 S.W.2d 940 (Tex.App.—Beau-

mont 1994), silence may be mistakenly viewed as an admission to such obstruction, therefore I write again—for obstruction was not my quest nor has it ever been.

We now have a new majority which, in effect, holds the trial court did not abuse its discretion in suppressing the evidence. In our original opinion, Justice Burgess dissented determining there was no showing of exigent circumstances to excuse obtaining a warrant.

While the institutional role of the trial court should be somewhat free from obstruction, I disagree that such freedom should be "carte blanche" for disregarding the evidence before it, considering matters not in evidence, and then premising its ruling upon such ex parte consideration.

Foregoing a restatement of the facts, I point out the only live witness testifying at the suppression hearing was Detective Alton James Baise. Officer Baise testified unequivocally his informant was reliable and had been so on six occasions, four resulting in arrest. From the brief Statement of Facts one thing is glaringly apparent—the trial court simply disregarded Officer Baise's testimony. Rather, the trial judge relied on the report of Officer Levy, deceased. To make this even more disconcerting, the trial judge relied upon deceased Officer Levy's report following the denial of appellant's request to have the report produced, as the following colloquy illustrates:

MR. KIMLER: Your Honor, I ask that both Officer Levy's report and this officer's report be produced.

MR. RODRIGUEZ: Your Honor, he hasn't testified that he used Officer Levy's report in preparation for testimony. He only stated that he may have read it in connection with filing the case. In fact, he specifically stated he did not read Officer Levy's report before testifying today.

THE COURT: How long a report could there be on something like this, three or four lines?

MR. RODRIGUEZ: Officer Levy's report, Your Honor, as is typical for Detective Levy, a long page, single-spaced, Your Honor.

THE COURT: Okay. If he used it for recollection, under the rules, you can use it. If he didn't refresh his memory with it today, then ... I'll deny the request.

(By Mr. Kimler)

Q. Does Detective Levy's report form a basis of your testimony today?

. . . . .

Q. So, nothing in Detective Levy's report that you're not already aware of is not going to be put in your testimony; is that right?

A. All I can testify to is that Detective Levy informed me where he located the cocaine at on the defendant. That's all I can do.

At the conclusion of Officer Baise's testimony, counsel for appellant called appellant to testify. The following occurred:

MR. KIMLER: Your Honor, I'd call Mr. Carter to the stand.

MR. RODRIGUEZ: I have nothing further, Your Honor.

THE COURT: That's okay. That won't be necessary. I'm going to go ahead and grant the motion to suppress.

MR. RODRIGUEZ: I'll need the Court to make specific findings. I'm sure you realize this is a test case because of the deceased officer, and I need a ruling. And for that specific purpose, Your Honor, I've got several cases like this that I need to get a ruling from the Ninth Court on.

MR. KIMLER: Your Honor, I have no objection to that; but I would state that I'm not attempting to test this because of the deceased status of the officer. Even if he had been alive, in my opinion, this would have been an invalid search; and I would have done the same thing.

THE COURT: Yeah. And I ordered Detective Levy's report turned over mainly because it does contain exculpatory information and that is that it appears to be, on this type case, it is as complete of a report as you usually get, and there's absolutely no mention of an attempt to obtain consent to search either of these persons. And the fact that there are written consent forms and those forms can certainly be

changed to accommodate a person, house, car, whatever you want to do, if they had one, they probably had another one they could have used if they had wanted. There's no suspicious activity. This doesn't even rise to the Terry situation where people are in suspicious places doing suspicious things.

So, I just find that there was no probable cause at all to walk up and begin searching.

MR. RODRIGUEZ: If I may, Your Honor, just to establish the parameters fully, is the Court, then, finding that the evidence is insufficient to show that the confidential informant was a reliable confidential informant?

THE COURT: The confidential informant is irrelevant really. And it doesn't rise to the necessity of needing a warrant because, you know, they can go out there and observe people. And if it was a consent search . . .

MR. RODRIGUEZ: Is the Court finding that there are no exigent circumstances to cover the lack of a search warrant?

MR. KIMLER: Even if there were—

THE COURT: (Interrupting) Even if there were, it doesn't matter.

MR. RODRIGUEZ: I understand that, Your Honor; but I do have to have all the parameters established firmly as to what the findings of the Court are.

THE COURT: I will find that there definitely were no warrants and that sort of thing. But there's no need for one either. I think the officer exceeded—there was no reasonable suspicion that they were doing anything.

MR. RODRIGUEZ: Even taking into account the information from the confidential informant.

THE COURT: Yes, sir.

MR. RODRIGUEZ: And there were no exigent circumstances.

THE COURT: Right.

I feel the present majority is dangerous precedent. The trial court simply disbelieved Officer Baise and accepted the content of Officer Levy's report, which was not prop-erly before the Court for its consideration. In my opinion, the present majority renders meaningless TEX.CODE CRIM. PROC. ANN. § 44.01(a)(5) (Vernon Supp.1994), regarding the State's ability to appeal an order suppressing evidence. If an appellate court has the authority to simply presume a trial court disbelieved the uncontradicted testimony of an arresting officer when reviewing the trial court's decision to suppress, the State would never prevail upon appeal.

I view the institutional role of trial courts as very important, not sacred or infallible. Likewise, deference to trial court decisions on motions to suppress is also very important, though not holy or omniscient. Deference, however, does not end at the intermediate appellate level. *See Arcila v. State*, 834 S.W.2d 357, 360 (Tex.Crim.App.1992).