**Cary STALEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–96–096CR.

Court of Appeals of Texas,
Beaumont.

Submitted July 28, 1997.

Decided Aug. 27, 1997.

Marva Provo, Beaumont, for appellant.

Tom Maness, Crim. Dist. Atty., Rodney D. Conerly, Asst. Crim. Dist. Atty., Beaumont, for State.

Before WALKER, C.J., and BURGESS, and STOVER, JJ.

## OPINION

BURGESS, Justice.

A jury convicted Cary Staley of possession of crack cocaine. Staley pleaded true to having a prior conviction and the jury assessed punishment at fifteen years' confinement in the Texas Department of Criminal Justice—Institutional Division and a fine of $6,000. In a single point of error, Staley alleges the trial court erred in refusing to grant a motion to suppress the evidence.[1] Staley argues the cocaine "was found pursuant to an unlawful arrest," there was "no probable cause to search or seize based on [a] furtive movement," there was "no probable cause to search incident to [a] lawful custodial arrest," there was "no valid Terry's [sic] search," and there was "no reasonable suspicion."

■ Although the point of error, as stated, is different than argued, we shall consider the issue, the correctness of the trial court's determination that the evidence was legally admissible. TEX.R.APP. P. 2(b), 52(a), 74(d),(f), (p). Furthermore, in this instance, we believe it appropriate to conduct that review in the same manner as a ruling on a motion to suppress. As expressed in *State v. Carter,* 936 S.W.2d 408 (Tex.App.—Beaumont 1996, no pet.):

> In reviewing a ruling on a motion to suppress evidence, "we are deferential to the trial court and will reverse only if it abused its discretion, i.e., if the decision is unsupported by the record." *Rachal v. State,* 917 S.W.2d 799, 809 (Tex.Crim.App. 1996). As recently set forth by the Court of Criminal Appeals in *DuBose v. State,* 915 S.W.2d 493, 496–497 (Tex.Crim.App. 1996) (citations omitted):

> > At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. The trial judge is also the initial arbiter of the legal significance of those facts. The court of appeals is to limit its review of the trial court's rulings, both as to the facts and the legal significance of those facts, to a determination of whether the trial court abused its discretion. Even if the court of appeals would have reached a different result, as long as the trial court's rulings are at least within the 'zone of reasonable disagreement,' the appellate court should not intercede.

> The reviewing court does not engage in its own factual review, but merely determines whether the trial judge's fact findings are supported by the record; we address only whether the trial court improperly applied the law to the facts. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). "As long as there is a 'substantial basis' in the record to support the magistrate's (or trial court's) ruling, it is impervious to appellate rever-

---

1. Motion to suppress was filed, but never heard. When the State offered the contraband into evidence, the following exchange occurred:

 [Prosecutor]: Your Honor, at this time I would tender State's 1 and it's contents.

 The Court: [Defense Counsel] other than the motion you filed, is there any other objection you want to make?

 [Defense Counsel]: Oh, okay, no, your Honor. Just for all the reasons contained in the motion and we have no other objection, other than the fact that we would object to any hearsay on the exhibits.

sal." *Carter*, 915 S.W.2d [501, 504 (Tex. Crim.App.1996) ].

*Id.* at 409–10 (footnotes omitted).

■ Since we are to review the facts in the light most favorable to the trial court's ruling, *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996), they are presented in that context.

At around 10:20 p.m. Beaumont Police Officer Chadney was on routine patrol when he observed a blue Cadillac traveling east on Phelan Boulevard. He noticed neither the driver nor the passenger were wearing seatbelts and began following the vehicle. Chadney observed the vehicle make a turn without using a turn signal. Chadney stopped the vehicle and asked the driver to produce a driver's license and proof of insurance. The driver identified himself as Weldon Johnson and indicated the passenger, Staley, was the owner of the car. When asked to produce an insurance card, Staley opened the glove box and pulled out a small white pill bottle and a sale's receipt for the vehicle. Staley handed the receipt to Johnson and attempted to hide or "palm" the small white bottle. Chadney continued to interview Johnson, who was becoming more nervous and evasive in his answers. Chadney then walked to the passenger's side of the vehicle. Staley moved the pill bottle to his chest area and put it in the "crook" of his left arm and chest. Officer Chadney then asked both what they were hiding. The men replied "nothing." Officer Chadney then seized the bottle. Chadney stated he felt it could possibly be contraband and he seized it so it would not be destroyed. Chadney explained the car was three to five feet away from Interstate 10 and if the bottle had been thrown out on the interstate, "it was gone."

Officer Chadney testified in his experience as a police officer he had seen crack cocaine carried in pill bottles such as the one seized. Once Chadney seized the bottle, he observed a white residue, he believed to be cocaine, along the lid of the bottle. He then called for another officer. He shook the bottle and heard what sounded like small rocks knocking together. This sound was consistent with rocks of crack cocaine. He then put the bottle in his pocket. When the other officers

arrived Chadney opened the bottle and found nine rocks of what he believed to be crack cocaine. Staley and Johnson were arrested and transported to jail. The pill bottle was then tagged and processed through the usual chain of custody for analysis.

The focus of this case is not the arrest or seizure of Staley, for he was arrested after Officer Chadney had probable cause to believe the substance in the bottle was an illegal substance; nor is it the search of the bottle, for Officer Chadney had probable cause to search the bottle once he observed the white powder and heard the "rocks"; nor is it the initial stop of the vehicle or the detention of the occupants, for Chadney had observed traffic violations. The focus must be the initial seizure of the pill bottle.

■ As noted in *Davis v. State*, 923 S.W.2d 781, 787–89 (Tex.App.—Beaumont 1996), *rev'd*, 947 S.W.2d 240 (Tex.Crim.App. 1997), the Fourth Amendment prohibition against unreasonable seizures applies to searches and seizures not only of persons but also of personal property. Furthermore, those principles enunciated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), concerning temporary detentions of persons also apply to detentions of personal property. *United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 2641–42, 77 L.Ed.2d 110 (1983). Such seizures or temporary detentions of personal property do not require a showing of probable cause, but, instead, are permitted on the basis of the existence of reasonable, articulable suspicion, premised on objective facts, that the luggage contains contraband or evidence of a crime. *Id.*, 462 U.S. at 702, 103 S.Ct. at 2641–42. To justify a temporary detention, an officer must possess specific articulable facts which amount to more than a mere hunch or suspicion that, combined with his personal experience and knowledge and any logical inferences, create a reasonable suspicion that criminal activity is afoot.

■ Officer Chadney, after direct and cross-examination, enunciated these factors which led to his seizure of the pill bottle (1) the nervousness of the driver; (2) Staley's activities with the bottle: reaching inside of

the glove box, trying to hide the bottle, putting the bottle in the crook of his arm, and (3) the possibility Staley could have thrown the bottle out of the window. We do not look at the facts recited by Officer Chadney in isolation; rather we consider the "totality of the circumstances—the whole picture." *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)(quoting *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981)). We shall address, in reverse order, these factors to determine if they are the type of objective facts which would give rise to the level of a reasonable, articulable suspicion, that the bottle contained contraband.

 The State cites no case, and we find none, where the possible destruction of evidence has ever been viewed as a circumstance giving rise to reasonable suspicion or probable cause. The possible destruction of evidence has been used as an exigent circumstance which may make the procuring of a search warrant impracticable, if probable cause is present. *E.g. McNairy v. State,* 835 S.W.2d 101, 106–07 (Tex.Crim.App.1991). Officer Chadney's view of the law, in this regard, was equivalent to "putting the cart before the horse". If Chadney had probable cause to believe the bottle contained contraband or perhaps had a reasonable suspicion, then, and only then, could he invoke "destruction of evidence" as a circumstance to seize.

Staley's actions regarding the bottle may have been curious, unusual or even vexatious to Chadney, but since Staley, if asked, was under no obligation to give the bottle to Chadney, *Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App.1995), he likewise was under no obligation not to play "hide and seek." In addition, the conduct of Staley was as consistent with innocent activity as with criminal activity, like reaching for the floorboard or putting something in his mouth is as consistent with innocent activity as with criminal activity. *See Schwartz v. State,* 635 S.W.2d 545, 547 (Tex.Crim.App.1982); *State*

*v. Phillips,* 752 S.W.2d 194, 196 (Tex.App.—Amarillo 1988, no pet.).

 Last, nervousness, when suddenly confronted by a police officer who asks questions, is as indicative of innocence as of guilt. Many people react nervously to being approached by police. *Daniels v. State,* 718 S.W.2d 702, 707 (Tex.Crim.App.1986), *overruled on other grounds Juarez v. State,* 758 S.W.2d 772 (Tex.Crim.App.1988). It is not indicative of guilt for a person to be nervous. *Glass v. State,* 681 S.W.2d 599, 602 (Tex. Crim.App.1984). *See also Montano v. State,* 843 S.W.2d 579, 582 (Tex.Crim.App.1992); *Hawkins v. State,* 853 S.W.2d 598, 602 (Tex. App.—Amarillo 1993, no pet.). Therefore, the nervousness of Johnson was no indication the pill bottle contained contraband.

A case not cited by the State[2], *Arnold v. State,* 831 S.W.2d 556 (Tex.App.—Austin 1992, pet. ref'd) is slightly similar, but readily distinguishable. In *Arnold,* two uniformed Austin police officers, on foot patrol, approached a place well known to the officers for extensive drug trafficking. Arnold was sitting on the front steps of the club. Arnold and the officers knew each other from earlier encounters, including a previous arrest of Arnold for possession of cocaine. The officers, on other occasions, had observed Arnold committing what they suspected were drug transactions. Upon seeing the officers, Arnold appeared startled, immediately stood up and hurried into the club. The officers followed him "[t]o see why he was running." *Id.* at 557. Inside the club, one officer saw Arnold reach into his pocket and withdraw a matchbox. The officer, from previous experience, knew that matchboxes were commonly used to carry controlled substances. In fact, Arnold had cocaine in a matchbox at the time of his prior arrest by these officers. Arnold attempted to place the matchbox behind a video game machine, but before he could do so the officer grabbed Arnold's hand and told him to stop. The two men began to struggle and fell to the floor. As he fell, Arnold tossed the matchbox onto the floor. The officers subdued Arnold, picked up the matchbox, looked inside and found what proved to be crack cocaine.

**2.** The State only cited three cases in its brief, none dealing with the ultimate issue.

The Austin court noted that since the officer candidly stated he wanted to look inside the matchbox because he suspected it contained crack cocaine,

> the dispositive issue in this cause is whether the officers had probable cause to believe that the box contained contraband. If they did, the arrest (if that is what it was) and search were lawful. If they did not, the seizure of the cocaine was unlawful even if appellant had been lawfully detained by the officers on less than probable cause.

*Id.* at 558 (citation omitted).

The court stated:

> Unlike the officer in *Davis,*[3] who had only "occasionally" seen narcotics hidden in matchboxes, the officers in this cause were shown to routinely encounter narcotics in such boxes. McKenzie testified that more than half the arrests he had made for possession of a controlled substance involved substances kept in matchboxes. Moreover, appellant had used a matchbox to hold the crack cocaine for which the officers had previously arrested him. Most importantly, the officer's suspicions were confirmed when he saw appellant trying to hide or dispose of the matchbox behind the game machine. Under the circumstances, a reasonably prudent and cautious police officer would be justified in believing that appellant would not go to such trouble if the box contained only matches. We find that the facts and circumstances gave the officers probable cause to believe that the matchbox in appellant's possession contained contraband and that the search of the box was, accordingly, lawful.

*Id.*

The similarity between *Arnold* and this case is both Arnold and Staley tried to "hide" a small container. The differences are numerous: the officers in *Arnold* routinely encountered narcotics in matchboxes, with more than half the arrests one officer had made for possession of a controlled substance involving substances kept in matchboxes—Officer Chadney testified he had seen crack cocaine carried in pill bottles such as the one seized, without any quantification; Arnold was sitting on the front steps of a place well known to the officers for extensive drug trafficking—Staley was in a vehicle on a public street; the officers knew Arnold from earlier encounters, including a previous arrest for possession of cocaine and had observed Arnold committing what they suspected were drug transactions there is no evidence Chadney was even familiar with either Johnson or Staley, much less aware of any previous illegal drug activity; Arnold became startled and hurried into the club—Staley made no attempt to flee; Arnold attempted to abandon the matchbox—Staley kept the pill bottle in his possession. Thus, *Arnold* provides no significant relationship to this case.

The factors Officer Chadney related are not the type of objective facts which would give rise to the level of a reasonable, articulable suspicion, that the bottle contained contraband. The pill bottle was seized in violation of the Fourth Amendment. The motion to suppress, in the context of an objection, should have been granted/sustained. The point of error is sustained. The judgment is reversed and remanded for a new trial.

**REVERSED AND REMANDED.**

---

3. *Davis v. State,* 829 S.W.2d 218 (Tex.Crim.App. 1992) (op. on reh'g).