ACCEPTED
03-15-00112-CR
5419608
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/26/2015 3:18:22 PM
JEFFREY D. KYLE
CLERK

NO. 03-15-00112-CR

**************

IN THE COURT OF APPEALS THIRD SUPREME JUDICIAL DISTRICT
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/26/2015 3:18:22 PM
JEFFREY D. KYLE
Clerk

_____

MATTHEW JARRETT LEE,
                    Appellant,

VS.

THE STATE OF TEXAS,
                    Appellee.

_____

Appeal from Cause No.: 2014CR0532
County Court at Law, #2, Comal County, Texas,
The Honorable Charles A. Stephens, II, Presiding

_____

APPELLANT'S BRIEF

_____

Frank B. Suhr
State Bar No.: 19466300
LAW OFFICES OF FRANK B. SUHR
473 S. Seguin Ave., Suite 100
New Braunfels, Texas 78130
Tel: (830) 625-4345; Fax/Metro: (830) 606-4511
fsuhr@newbraunfelslaw.com

Court-appointed Appellate Counsel for Appellant

CONDITIONAL REQUEST FOR ORAL ARGUMENT

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1, Texas Rules of Appellate Procedure, the following is a list of the parties and counsel:

Appellant:  Matthew Jarrett Lee

Appellant's counsel: Trial:  Michael Zamora,  SBN: 24008327
211 Babcock
San Antonio, Texas 78201

Appellate:  Frank B. Suhr,  SBN: 19466300
473 S. Seguin Ave., Suite 100
New Braunfels, Texas 78130
Tel: (830) 625-4345
Fax/Metro: (830) 606-4511
fsuhr@newbraunfelslaw.com

Appellee:  The State of Texas

Appellee's counsel:  Jennifer Tharp; Comal County Criminal District Attorney's Office

Trial:  Ryan Vickers,  SBN: 24079518
vicker@co.comal.tx.us

Trial:  Abigail Whitaker,  SBN: 24051915
whitta@co.comal.tx.us

Appellate:  Joshua Presley,  SBN: 24088254
Preslj@co.comal.tx.us
150 N. Seguin Ave.
New Braunfels, Texas 78130
Tel:  (830) 221-1300
Fax: (830) 608-2008

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT ON CONDITIONAL REQUEST FOR ORAL ARGUMENT. . . . vii

ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT AND AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ISSUE PRESENTED NUMBER ONE: . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    **There Is Insufficient Evidence to Support the Jury's Finding of Appellant Guilt for the Offense of Possession of Marijuana.**

    **A.**    General Standard of Review for Sufficiency of the Evidence. . . . . . 4

    **B.**    Charging Instrument and Applicable Law. . . . . . . . . . . . . . . . . . . 5

    **C.**    Sufficiency - Possession of a Controlled Substance. . . . . . . . . . . . 6

    **D.**    Case on Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        **1.**    **Proximity**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        **2.**    **Bloodshot eyes**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**3.**     **Nervousness**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**4.**     **Absence of Many Links**. . . . . . . . . . . . . . . . . . . . . . . . 15

**5.**     **Number of Links Greater Against Driver**. . . . . . . . . . . . . 16

**6.**     **Officer was Relying Primarily on Proximity**. . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**Case Law:**

*Allen v. State*, 249 S.W.3d 680 (Tex.App.–Austin 2008, no pet.). . . . . . . . 4-10, 12

*Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010). . . . . . . . . . . . . . . . . . . . . 5

*Byrd v. State,* 336 S.W.3d 242 (Tex.Crim.App. 2011). . . . . . . . . . . . . . . . . . . . . . 4

*Carmouche v. State*, 10 S.W.3d 323 (Tex.Crim.App. 2000). . . . . . . . . . . . . . . . 13

*Clayton v. State,* 235 S.W.3d 772 (Tex.Crim.App. 2007). . . . . . . . . . . . . . . . . . . . 4

*Davis v. State*, 947 S.W.2d 240 (Tex.Crim.App. 1997)(en banc). . . . . . . . . . . . . 15

*Evans v. State*, 202 S.W.3d 158 (Tex.Crim.App. 2006). . . . . . . . 6-8, 12-13, 15, 17

*Fisher v. State*, 851 SW2d 298 (Tex.Crim.App. 1993). . . . . . . . . . . . . . . . . . . . . . 5

*Glass v. State*, 681 S.W.2d 599 (Tex.Crim.App. 1984). . . . . . . . . . . . . . . . . 14-15

*Guevara v. State*, 152 S.W.2d 45 (Tex.Crim.App. 2004). . . . . . . . . . . . . . . . . . 4, 5

*Jackson v. Virginia,* 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 17

*Montano v. State*, 843 S.W.2d. 579 (Tex.Crim.App. 1992). . . . . . . . . . . . . . . . . . 15

*Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992). . . . . . . . . . . . . . . . 5

*Olivarez v. State*, 171 S.W.3d 283 (Tex.App.-Houston [14th Dist.]. . . . . . . . . . 7-8
2005, no pet.)

*Padilla v. State,* 326 S.W.3d 195 (Tex.Crim.App. 2010). . . . . . . . . . . . . . . . . . . . 5

*Poindexter v. State,* 153 S.W.3d 402 (Tex.Crim.App. 2005). . . . . . . . . . . . . . . . 6, 7

*Shams v. State,* 195 S.W.3d 346 (Tex.App.–Austin 2006, pet. ref'd). . . . . . . . . . . 5

*Whitworth v. State*, 808 S.W.2d 566 (Tex.App.–Austin 1991, pet. ref'd). . . . . . . . 8

*Williams v. State*, 2010WL 2788819 (Tex. App.–Austin July 14, 2010). . . . . . . . 10
(Mem. Op.)(not designated for publication)

**Statutes:**

§481.002(38), Texas Health & Safety Code Ann. (West). . . . . . . . . . . . . . . . . . . . 6

§481.121, Tex. Health & Safety Code Ann. (West 2013). . . . . . . . . . . . . . . . . . . 5

§6.01(b), Texas Penal Code Ann. (West 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tex.R.App.P. 9.4.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rule 39.1 Tex.R.App.Pro. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

## STATEMENT OF THE CASE

Appellant was charged by information with the Class B misdemeanor offense of possession of marijuana. (CR 12). Appellant tried his case as to guilt/innocence to a jury (RR I 1) who found him guilty. (CR 46). The trial court assessed punishment at 90 days confinement in county jail, probated for 12 months, $1,000 fine ($750 of which was probated), court costs (CR 52), a 6 month driver's license suspension (CR 54) and imposed other standard conditions of probation (CR 62).

## STATEMENT ON CONDITIONAL REQUEST FOR ORAL ARGUMENT

Appellant believes oral argument in this case is unnecessary pursuant to Rule 39.1, Tex.R.App.Pro., as the dispositive issue has been authoritatively decided, the legal arguments are, or will be, adequately presented in the briefs and record, and/or the decisional process would not be significantly aided by oral argument. Rule 39.1(b), (c) & (d), Tex.R.App.Pro. However, if Appellee should request oral argument and this Court grant Appellee's request, Appellant respectfully requests the opportunity to appear and argue.

## ISSUE PRESENTED

There is insufficient evidence to support the jury's finding of Appellant's guilt of the offense of possession of marijuana.

## STATEMENT OF FACTS

Matthew Jarrett Lee (hereinafter referred to as "Appellant" or "Lee") was passenger in a vehicle heading southbound on IH 35 in Comal County, Texas. (RR II 20-22). A two officer Sheriff's patrol unit stopped the vehicle Appellant was riding in for obstructed/expired dealer's license plate. (RR II 21-22, 74). The video of the subsequent stop and search was introduced into evidence. (Ex. 4).

The vehicle was occupied by four people. (RR II 21-22). Appellant occupied the backseat on the driver's side of the vehicle. (RR II 21-22, 74). A male who owned the vehicle was driving (hereinafter "Driver") the vehicle. (RR II 21, 56, 74). A female was in the front passenger seat (hereinafter "Passenger"). (RR II 21, 56, 74). Passenger's infant that was three to four months old (hereinafter "Baby") was in a infant carrier in the back seat behind her. (RR II 21-22, 74).

The officers had Driver exit the vehicle and spoke with him. (RR II 73; Ex 4, 2:09[1]). Later the officers had Lee get out of the vehicle and sit on the ground in front of the vehicle. (RR II 39, 85; Ex. 4 , 8:56). Lee was viewed as overly nervous by the officers and had bloodshot eyes. (RR II 22-23, 26-27, 48, 75-78). Passenger stayed inside the vehicle along with Baby for several minutes until Driver gave consent to

---

1. References to the videos introduced into evidence, Exhibit 4 (dash camera) and Exhibit 5 (backseat of patrol car camera), will be cited to an approximate minute : second reference like so: (Ex. 4, 2:09).

search the vehicle. (RR II 27, 50-51, 78-80, 122-123; Ex 4, 12:20[consent]).

The officers started by searching Passenger's bags. (Ex. 4, 13:00). Passenger was then removed from the vehicle and searched (Ex. 4, 16:50 - 17:50) followed by a search of Baby and the areas of the vehicle she occupied. (Ex. 4, 17:58-18:28). Contraband in the form of marijuana was found on the rear passenger floorboard under where Baby was in an infant carrier. (RR II 44, 83). The contraband was found within a foot of Lee's reach from where Lee had been earlier sitting on the other side of the hump in the floorboard. (RR II 60-61, 86). The easiest person to be able to reach the contraband was Lee. (RR II 87). The officers located no paraphernalia either in the vehicle or on any person from the vehicle. (RR II 55, 130).

It is undisputed that Lee was never seen to have the marijuana in his actual possession nor was he observed attempting to dispose of it. (RR II 145, 130, 52). The officers testified that Appellant's proximity to the contraband, his nervous behavior, and bloodshot eyes linked Appellant, and only Appellant, to the contraband. (RR II 43-44, 55, 98-99, 109, 120, 126). Thus, Appellant was arrested for the Class B misdemeanor offense of possession of marijuana.

Appellant elected to try his case to a jury. The jury charge does not include instructions or definitions relating to the law of parties. (CR 42-45). The jury found Appellant guilty and the trial court assessed punishment of a probated sentence.

## SUMMARY OF THE ARGUMENT

There was legally insufficient evidence to support the jury's guilty verdict as the evidence to link Appellant to the contraband merely consisted of mere proximity, nervousness and bloodshot eyes.

Nervousness should not be sufficient evidence of consciousness of guilt under the law or the facts of this case. Moreover, the bloodshot eyes should not be sufficient evidence of intoxication without any other sign of intoxication, no odor of marijuana, no other person in the vehicle admitted Lee had ingested marijuana, and no paraphernalia was found.

This only leaves Lee's proximity as the driver's side rear passenger to contraband found on the opposite floorboard under the infant carrier. That, without more has consistently been held to be insufficient to link Lee to either knowledge of the contraband or the possession thereof. Thus, this Court should reverse the judgment of the trial court and an order of acquittal be entered.

# ARGUMENT AND AUTHORITY

**ISSUE PRESENTED NUMBER ONE:**

**There Is Insufficient Evidence to Support the Jury's Finding of Appellant's Guilt of the Offense of Possession of Marijuana.**

A.     General Standard of Review for Sufficiency of the Evidence.

The Due Process Clause of Fourteenth Amendment to the United States Constitution requires that the State prove every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 313 (1979); *Byrd v. State,* 336 S.W.3d 242, 246 (Tex.Crim.App. 2011); *See also, Allen v. State*, 249 S.W.3d 680, 688 (Tex.App.–Austin 2008, no pet.). When reviewing the sufficiency of the evidence to support a conviction, all the evidence in the record that the jury was permitted to consider must be reviewed, whether direct or circumstantial, properly or improperly admitted, or submitted by the State or the defense. *See Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Allen,* at 688-89.  The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Allen*, at 689, *citing Guevara v. State*, 152 S.W.2d 45, 49 (Tex.Crim.App. 2004)(other citations omitted).  The evidence is reviewed in the light most favorable to the verdict and the reviewing court assumes that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that

supports the verdict. *Jackson,* 443 U.S. at 318; *see also Shams v. State,* 195 S.W.3d 346, 347 (Tex.App.–Austin 2006, pet. ref'd); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010).

When faced with a record of historical facts that supports conflicting inferences, the reviewing court presumes that the trier of fact resolved any such conflicts in favor of the verdict and defers to that resolution. *Jackson,* 443 U.S. at 326; *Padilla v. State,* 326 S.W.3d 195, 200 (Tex.Crim.App. 2010).Ultimately, "[i]f, based on all the evidence, a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires" the reviewing court to reverse the case and order a judgment of acquittal. *Allen*, at 688, *quoting Fisher v. State*, 851 SW2d 298, 302 (Tex.Crim.App. 1993) and *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992); *Guevara*, 152 S.W.3d at 49.

B.    Charging Instrument and Applicable Law

Appellant was charged by information with the Class B misdemeanor offense of Possession of Marijuana, under two ounces, pursuant to Section 481.121, Tex. Health & Safety Code Ann. (West 2013): "... on or about 8th day of December, 2013, in the County of Comal and State of Texas, Matthew Jarrett Lee, Defendant did then and there intentionally or knowingly possess a usable quantity of marijuana, to-wit: under 2 ounces ..." (CR 12).  This appeal focuses on the sufficiency of the evidence

as to the intentional or knowing possession of the contraband; to wit, marijuana.

In possession of contraband cases, the State must prove that the accused intentionally or knowingly exercised actual care, custody, control, or management over the substance and that the accused knew the substance was contraband; in this case, marijuana. _Evans v. State_, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006); _Allen_, 249 SW.3d at 690 (other citations omitted); _see also_ §481.002(38), Texas Health & Safety Code Ann. (West). "Possession is a voluntary act if the possessor obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." _Allen_, at 689-690, _citing_ §6.01(b), Texas Penal Code Ann. (West 2003)(_other citations omitted_).

C.    Sufficiency - Possession of a Controlled Substance

When, as in the case on review, "... an accused is not in exclusive possession and control of the place where the contraband is found, it cannot be concluded or presumed that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances connecting or linking the accused to the knowing possession of contraband." _Allen_, 249 S.W.3d at 690, _citing Poindexter v. State,_ 153 S.W.3d 402, 406 (Tex.Crim.App. 2005)(other citations omitted). Regardless of whether there is direct or circumstantial evidence of possession of the drugs, it must be established "... that the defendant's connection

-6-

with the drug was more than fortuitous." _Evans_, at 161; _see also_ _Allen_, at 691;

_Poindexter_, at 406. "This rule simply restates the common-sense notion that a person

- such as a father, son, spouse, roommate, or friend - may jointly possess property like

a house but not necessarily jointly possess the contraband found in that house."

_Allen_, at 693 n. 13, _citing Poindexter_, at 406.

Moreover, it is well settled that "[m]ere presence at the location where drugs

are found is insufficient by itself to establish possession of the contraband." _Allen_,

249 S.W.3d at 691, _citing Evans,_ 202 S.W.3d at 162 (other citations omitted).

"However, presence and proximity when combined with other evidence, direct or

circumstantial, may be sufficient to establish a knowing possession of contraband."

_Allen_, at 691, _citing Evans,_ at 162.

The Texas Court of Criminal Appeals in _Evans_ identified fourteen non-

exclusive factors[2] that may link an accused to contraband in order to establish a

person's knowing possession of the contraband. _Evans_, at 162 n.12, _citing Olivarez_

---

2. "(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt." _Evans_, at 162 n.12.

*v. State*, 171 S.W.3d 283, 291 (Tex.App.-Houston [14th Dist.] 2005, no pet.). *Evan*'s further stated that "[i]t is ... not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial." *Evans*, at 162.

This Court has held that the question of "whether the evidence is sufficient to sustain a conviction for knowing possession of contraband must be answered on a case by case basis." *Allen*, at 702-703, *citing Whitworth v. State*, 808 S.W.2d 566, 569 (Tex.App.–Austin 1991, pet. ref'd). What matters is not the sheer number of links, but rather the logical force of all the evidence, direct and circumstantial. *Allen,* at 693(other citations omitted). The links "... must generate more than a strong suspicion or mere probability of guilt." *Allen,* 249 S.W.3d at 693 n. 13 (other citations omitted)." As will be shown, the State never met that burden.

This Court has two opinions which Appellant asserts are particularly instructive which show the application of the above law to the facts of each case. In *Allen v. State*, the Austin Police Department began surveillance of an apartment of a man named Houston in anticipation of executing a search warrant about an hour later. *Allen*, at 684. Allen was seen coming out of the apartment and returning on one occasion. *Id*. Two separate persons went to the apartment and left after a few minutes which the officers testified could be indicative of narcotic activity. *Id*. When the search warrant was executed, Allen was seated on a couch in the living room with her

infant and Mr. Houston's child, those apparently being the only occupants of the apartment. *Id*. A recently smoked marijuana roach was on the couch that made the premises smell of marijuana. *Id*., at 684-685. At trial, Allen admitted to possession of a marijuana roach in her cigarette pack. *Id*., at 687.

A razor blade was on the bar between the living room and kitchen, another was in one of Allen's diaper bags, and a third was on a platter with baggies of cocaine on top of the refrigerator. *Id*., at 684-685. Allen's fingerprints were on the platter. *Id*., at 685. Under the kitchen sink, more cocaine and paraphernalia was found and in another kitchen cabinet, even more cocaine was found. *Id*., at 684. In the dining area near the kitchen, 134 grams of cocaine was found in a dog food bag. *Id*.

This Court exhaustively went through the applicability of links relied upon by the State to show knowledge and possession. *Id*., at 694-702. In the end, this Court held that although the evidence tended to infer that Allen knew the cocaine was present in the apartment, it did not show that she aware that she possessed the cocaine, nor that she actually possessed it. *Id*., at 703. Even the fingerprint evidence along with proximity was not enough to trump other factors which tended to not establish knowing possession. *Id*., (other citation omitted). This Court noted that evidence in a knowing possession of contraband case must amount to more than mere conjecture. *Id*., at 704 (other citation omitted). This Court ultimately held that proof

amounting to only a strong suspicion or mere probability of guilt is insufficient to sustain a conviction. *Id*. (other citations omitted).

The other case from this Court is *Williams v. State*, 2010WL 2788819 (Tex. App.–Austin July 14, 2010)(Mem. Op.)(not designated for publication). There, the State introduced evidence that Williams had the following links to the cocaine found in a closet in her apartment: she lived in the apartment and was the sole tenant on the lease; she refused to cooperate with police, resisted arrest and warned her brother and his girlfriend the police were present; she knew both of her brothers were drug dealers; she took money from her brothers even though she could not tell the jury of legitimate employment one of them held; her other brother had previously been arrested with drugs at her old apartment; and, the brother that was present was so intoxicated she should have recognized that fact. *Williams*, Slip op., at 4.

Significant to the case on review, it was held that in was unreasonable to infer that William's resisting arrest and calling out to warn her brother indicate a consciousness of guilt relating to the drugs in the closet. *Id*., at 5. In reversing and ordering an acquittal, this Court held that these facts were "legally insufficient to establish beyond a reasonable doubt that Serena knowingly exercised control over the drugs in her closet." *Id*., at 5.

D.    Case on Review.

In the case on review, Lee was charged as the only principal to the crime.  The jury charge does not include any instructions or definitions as to the law of parties. (CR 42-45).  The only support for Lee's conviction is proximity, bloodshot eyes and his nervous demeanor.  (RR II 43-44, 55, 98-99, 109, 120, 126).  In fact, the arresting officer agreed that Lee was singled out because he was in the back seat ,with red eyes and his nervous demeanor.  (RR II 126).

1.    **Proximity**

Lee was removed from the vehicle at about the 8:00 mark of the recording of the traffic stop.  (Ex 4, 8:00).  This left Passenger alone in the vehicle with Baby until 10:50 when the arresting officer talks to her for a few minutes.  (Ex. 4, 10:50).  She is then left in the car again from 12:00 until 12:56 while the arresting officer obtains consent to search from Driver. The search begins at 13:00.  At 17:58 the arresting officer starts searching the area occupied by Baby in the back seat.  At 18:28 the small baggie of marijuana is found.  Thus, there were several instances evident on the video where Passenger could have dropped the contraband in the backseat area where it was eventually found.  In any event, the contraband was found in a place that Lee had not been near for 10 minutes and that area was occupied by others during that time.  Logically, that should weaken the effect of this link.

-11-

Even conceding the proximity of where Lee was sitting 10 minutes earlier to the location the contraband was eventually found was closer than any other adult from the vehicle, those facts alone are insufficient to establish either possession of the contraband or the element of knowledge of the contraband. *See* <u>Allen</u>, 249 S.W.3d at 695. As stated above, proximity, without more, is insufficient to establish possession of contraband. <u>Evans</u>, 202 S.W.3d at 161.

2.    **Bloodshot eyes**

Both officers testified that Lee had bloodshot eyes. (RR II 41-42, 55, 109, 120). Presumably this is evidence of link #4 from Evans; whether the defendant was under the influence of narcotics when arrested.

Although the officers' testified Lee's eyes were bloodshot, that fact is not noticeable on the video of Lee in the back of the patrol car going to jail where his eyes are clearly visible and do not appear to be bloodshot. (RR II 120-121, Ex 5[3] [in total, but specifically, 36:40, 38:30, 43:05, 44:20; 49:03]). The arresting officer first admits that you cannot really tell if Lee's eyes are bloodshot on the video, then claims to be able to tell that Lee's eyes are bloodshot on the video. (RR II 121). If the Court

3. To save the Court and opposing counsel time, the first 35 minutes of Ex. 5 is merely video of an empty backseat of the patrol unit. You can hear the audio portion of what Ex. 4 shows, but it has little other use. Lee first gets into the backseat of the patrol unit at 35:33. As the camera is close to Lee's face, his eye whites can be seen.

agrees with the officers that Lee's eyes are obviously bloodshot, this paragraph of this brief should be ignored. However, if the videotape provides indisputable evidence contradicting the officers testimony, this Court should not be bound to accept the testimony. *See Carmouche v. State*, 10 S.W.3d 323, 332 (Tex.Crim.App. 2000).

Moreover, other than bloodshot eyes, there were no other signs of marijuana use noted by the assisting officer. (RR II 26-27). There was no odor of marijuana present and no paraphernalia was found. (RR II 54-55). The arresting officer even conceded that red eyes could be alcohol consumption, allergies and irritants. (RR II 42-43). Surely it is not logical to assume everyone with bloodshot eyes is under the influence of marijuana without a shred of other evidence. At best, this is but an equivocal link of being under the influence of marijuana, but does not rise to the level to establish knowledge or possession of marijuana.

3.   **Nervousness**

Both officers testified that Lee was nervous. (RR II 41-42, 57, 75-76). Presumably this is evidence of link #14 from *Evans*; whether the conduct of the defendant indicated a consciousness of guilt. The testimony and video of the stop establish the following regarding Lee's nervousness. The arresting officer first addressed Lee by pointing out that he was not wearing a safety belt. (Ex. 4, 2:09). Shortly thereafter, the arresting officer opens Lee's door and asks Lee not to get out

of the vehicle. (Ex 4, 2:32). After talking with Driver for a while, the arresting officer goes back to talk to Lee. (Ex. 4, 5:50).

Immediately, the arresting officer asks Lee why he has two phones. (Ex. 4, 5:55). Lee's explanation is not particularly nervous. (Ex. 4, 5:58). The arresting officer then tells Lee before getting out of the vehicle the officer would like to not have to see Lee's underwear and telling him it is a sign of respect. (Ex. 4, 6:05). Initially, Lee response by saving "Okay, that's fine, I will pull my pants up for you" (Ex. 4, 6:08), but as the officer keeps talking about respect, he clearly becomes more nervous (Ex. 4, 6:15). If Lee was not nervous enough, after being sat on the curb at the front of the vehicle he is instructed that if he got up it would be found to be an act of aggression against the officer. (Ex. 4, 10:21). At this point the officer's contact with Lee is over until after the search. This clearly shows the logical context in which Lee was nervous as opposed to some consciousness of guilt.

Assuming without conceding that the evidence on the video establishes that Lee's conduct was overly nervous, it still does not constitute evidence of consciousness of guilt. The Texas Court of Criminal Appeals has stated:

> We pause to point out that Rodriguez never amplified on why he thought the passenger appeared to him to be "nervous." We believe that in this day and time that when a citizen is suddenly facing an imminent confrontation with police officers for unknown reasons, most citizens with nothing to hide will nevertheless manifest an understandable

-14-

nervousness in the presence of the officer. Not only the guilty, but the not guilty as well, will react much the same as the outside passenger did in this instance, i.e., exercising a natural impulse. Thus, the appearance of being nervous is as consistent with a person being guilty of having committed or preparing to commit a criminal wrong as with a person not being guilty of anything more than being in the wrong place at the wrong time.

Glass v. State, 681 S.W.2d 599, 602 (Tex.Crim.App. 1984)(other citation omitted);

see also Davis v. State, 947 S.W.2d 240, 248 (Tex.Crim.App. 1997)(en banc) citing

Montano v. State, 843 S.W.2d. 579, 582 (Tex.Crim.App. 1992). The arresting officer

even admitted that there could be reasons to be nervous other than consciousness of

guilt. (RR II 41) and that it is not a crime to be nervous when interacting with a

police officer (RR II 122).

Lee's nervousness does not logically establish that he either knew of or

possessed the contraband. At best, it is a mere suspicion of such act.

4. **Absence of Many Links**

While not dispositive, many of the Evans links had either no evidence to

support their existence or there is evidence that negated their existence. Specifically,

Lee: made no incriminating statements; did not attempt to flee; and, was not found

with a large amount of cash. There was no odor of marijuana (RR II 54), no other

contraband or paraphernalia was found (RR II 55, 130), Lee did not make furtive

gestures (RR II 116), he did not throw, hide or dispose of anything (RR II 52, 59,

145) and Lee did not own the vehicle (RR II 56).  Moreover, the other occupants of the vehicle did not admitted that Lee had ingested marijuana. (Ex. 4, 25:00).  Lastly, neither officer ever saw Lee possess the marijuana.  (RR II 47-48, 145).  The logical force of the absence of these links, and in some cases the direct evidence of the negation of the links, does not lead one to the conclusion that either Lee had knowledge of the contraband, or possessed it.

5.      **Number of Links Greater Against Driver**

Driver owned and operated the vehicle.  (RR II 56).  Driver took evasive action to avoid getting in front of the police officers.  (RR II 71).  Driver was on parole or probation for a drug offense.  (RR II 25, 49, 57, 125).  Driver was so nervous and agitated after the contraband was found, the assisting officer has to tell him to calm down, not get worked up and to not do anything silly.  (Ex. 4, 23:10 -23:45).  The logical force of this evidence is greater than Lee, and logically goes against the conclusion that Lee knew and possessed the contraband as a principal.

6.      **Officer was Relying Primarily on Proximity**

Interestingly, the arresting officer states that if the facts where all the same but the contraband was found in the console, only Driver would have been arrested and he could not have put the case on Lee.  (RR II 101-102).  Thus, according to the arresting officer, merely moving the location the contraband was found one foot,

-16-

combined with Driver's ownership and control of the vehicle, would preclude Lee from being in possession even with bloodshot eyes and an overly nervous demeanor. However, since the contraband was found a foot away on the floorboard under the infant carriage, then the only person in possession is Lee, in spite of Driver still owning and operating the vehicle and all of his links set forth above. What is clear about that belief of the arresting officer is that proximity trumps all other evidence. Fortunately, the law cited above does not support that proposition.

**CONCLUSION**

Viewing all the evidence in the light most favorable to the State, the logical force of the combined pieces of circumstantial evidence in this case, together with reasonable inferences from them, could not lead a rational jury to determine that Lee exercised care, custody, control, or management of the marijuana found on the floor of the other side of the vehicle, under the baby's car carrier and that he knew the small bag of marijuana was contraband. *See Evans,* 202 S.W.3d at 162. Accordingly, the evidence was insufficient to support Lee's conviction for possession of marijuana. *See Jackson,* 443 U.S. at 318-19

Proximity alone is insufficient to show knowledge or possession of contraband. To evade that well-established rule of law, the arresting officers claim Appellant's nervous disposition and bloodshot eyes are the additional links necessary to support

-17-

the jury's finding of guilt to the offense of possession of marijuana. As is set forth above, without more, those links fail to establish either that Lee had knowledge of the marijuana or possessed it.

For the above reasons, Appellant's issue presented should be granted and the judgment of the trial court should be reversed and a judgment of acquittal ordered.

## PRAYER

Appellee prays that this Honorable Court sustain Appellant's sole issue presented, reverse the judgment of the trial court and enter a judgment of acquittal.

Appellee prays for such other relief as he may be entitled.

Respectfully submitted,


 /s/ *Frank B. Suhr*

Frank B. Suhr
THE LAW OFFICES OF FRANK B. SUHR
State Bar No. 19466300
473 S. Seguin Ave., Suite 100
New Braunfels, Texas  78130
Tel: (830) 625-4345 / Fax: (830) 606-4511

Court-appointed Attorney for Appellant

**CERTIFICATE OF SERVICE**

I certify that a true copy of the above was served on the Office of the Comal County Criminal District Attorney and the Clerk of the Third Court of Appeals via e-service in accordance with the Texas Rules of Appellate Procedure on May 26, 2015.

/s/ *Frank B. Suhr*
Frank B. Suhr, Attorney for Appellee

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Tex.R.App.P. 9.4(e) having been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex.R.App.P.9.4(i), because it contains 4526 words, excluding any parts exempted thereby.

/s/ *Frank B. Suhr*
Frank B. Suhr